


**RANDY J. RISNER**
Interim City Attorney, SBN 172552
**BY:    MEERA BHATT**
Assistant City Attorney, SBN 259203
**KATELYN M. KNIGHT**
Assistant City Attorney, SBN 264573
**FARRAH HUSSEIN**
Deputy City Attorney, SBN 305726
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, 3rd Floor
Vallejo, CA  94590
Tel:    (707) 648-4545
Fax:    (707) 648-4687
Email:  Meera.Bhatt@cityofvallejo.net
         Katelyn.Knight@cityofvallejo.net
         Farrah.Hussein@cityofvallejo.net

Attorneys for Defendants CITY OF VALLEJO and JARRETT TONN

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| NEFTALI MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; NORA MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; MICHELLE MONTERROSA, individually; ASHLEY MONTERROSA, individually,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF VALLEJO, a municipal corporation; JARRETT TONN, individually, and, Vallejo police officers DOES 1-25, inclusive,<br><br>Defendants. | Case No:   2:20-cv-01563-TLN-DB<br><br>**DEFENDANT CITY OF VALLEJO'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    December 3, 2020<br>Time:    2:00 p.m.<br>Crtrm:   2 |

---

-2-

Table of Contents

I. INTRODUCTION ................................................................................................................. 5

II. BACKGROUND .................................................................................................................. 6

   A.   Factual Background ........................................................................................................ 6

   B.   Efforts to Influence this Case through the Media by Plaintiffs and their Counsel .............. 7

III. ARGUMENT ..................................................................................................................... 15

IV. CONCLUSION .................................................................................................................. 19

Table of Authorities

**Cases**

*Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979). .................................................................. 19

*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1032, 1074-75 (1991)............................................. 15

*Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 591 (9th Cir. 1985). ...... 15

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 601, n.27 (1976). ....................................................... 15

**Statutes**

Penal Code § 832.7(b)(5)(D) ....................................................................................................... 9

**Rules**

California Rules of Professional Conduct Rule 3.6 ...................................................................... 15

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

     **PLEASE TAKE NOTICE** that on December 3, 2020 at 2:00 p.m. in Courtroom 2 of the above Court, Defendants City of Vallejo and Jarrett Tonn will and hereby do move for a protective order prohibiting Plaintiffs' counsel from making further public statements during the pendency of this action regarding (1) the character, credibility, or reputation of a party; (2) the identity of a witness or the expected testimony of a party or a witness; (3) the contents of any pretrial confession, admission, or statement given by a party or that person's refusal or failure to make a statement; (4) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence; (5) the strengths or weaknesses of the case of either party; (6) the character, credibility, or reputation of the Vallejo Police Department; and (7) any other information counsel knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.

     This motion is made pursuant to *Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991) and *Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 591 (9th Cir. 1985) on the grounds that Plaintiffs' counsel's ongoing statements to media and the public present a substantial likelihood of prejudicing the integrity of the pending proceedings and pose a serious and imminent threat to Defendants' right to receive a fair trial by an impartial jury and there are no less restrictive alternatives available to protect this right.

     This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Katelyn Knight, and on such other written and oral argument as may be presented to the Court.

DATED:  October 6, 2020          Respectfully submitted,

                                      */s/ Katelyn M. Knight*
                                      MEERA BHATT
                                      KATELYN M. KNIGHT
                                      FARRAH HUSSEIN
                                      Attorneys for Defendants
                                      CITY OF VALLEJO and JARRETT TONN

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.**

**INTRODUCTION**

This action arises from an officer-involved shooting that took place in the middle of the most extensive and chaotic organized crime spree the City of Vallejo has ever experienced. On the night of June 1, 2020 and early morning hours of June 2, 2020, caravans of looters planned to target Vallejo and were systematically burglarizing pharmacies, marijuana dispensaries, and gun stores before recklessly fleeing at high speeds. The police force was overwhelmed. In the midst of this chaos, a group of officers responded to a call for assistance with a group of looters that were observed breaking into Walgreens pharmacy—the third burglary at that location that night. As the officers were pulling into the parking lot, they heard a broadcast over the radio that the suspects were "armed, possibly armed". At that moment, a suspect ran from the Walgreens toward a waiting black sedan. Instead of jumping into the sedan and fleeing, the suspect abruptly stopped and turned toward the officers in a crouching down half-kneeling position as if preparing to shoot and moved his hands toward what appeared to be the butt of a handgun near his waist. The officer seated in the rear of the police vehicle fired five shots at the suspect through the windshield, striking and mortally wounding him. The item that had appeared to be the butt of a handgun was later found to be the butt of a hammer protruding from the front pocket of the suspect's hooded sweatshirt.

Since this incident took place, the Burris Firm has been quite literally trying this case in the media, including a 45-minute press conference during which Plaintiffs' counsel used demonstrative aids to discuss the distance between the shooting officer and suspect, the evidence available and not available and its impact, and entry and exit wounds, and attempted to impeach witnesses with information about their background. Plaintiffs' counsel has repeatedly and incorrectly stated that the suspect, Sean Monterrosa, was on his knees with his hands up in surrender, despite the fact that they have not seen any of the evidence relevant to what Monterrosa was doing at the time of the incident. Plaintiffs' counsel has also repeatedly referred to the shooting as a murder, insinuated that individuals associated with the City are lying or have

tampered with the criminal investigation, communicated with the District Attorney to attempt to influence her decision, and repeatedly made inflammatory comments to prejudice the public against Defendants.

Defendants respectfully request that the Court issue a protective order prohibiting Plaintiffs' counsel from making further public statements during the pendency of this action regarding (1) the character, credibility, or reputation of a party; (2) the identity of a witness or the expected testimony of a party or a witness; (3) the contents of any pretrial confession, admission, or statement given by a party or that person's refusal or failure to make a statement; (4) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence; (5) the strengths or weaknesses of the case of either party; (6) the character, credibility, or reputation of the Vallejo Police Department; and (7) any other information Plaintiffs' counsel knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.  Such an order is not only appropriate in this case, it is necessary to ensure that Defendants receive a fair trial by an impartial jury.

## II.

## BACKGROUND

### A.   Factual Background

This case arises from an officer-involved shooting that took place on June 2, 2020. In the wake of the civil unrest following the killing of George Floyd, caravans of looters planned to target Vallejo and were systematically burglarizing pharmacies, marijuana dispensaries, and gun stores before recklessly fleeing at high speeds.  Portions of Vallejo City Hall were set on fire. The City of Vallejo, along with most other Bay Area cities and counties[1], declared a local emergency and imposed a curfew.  Despite the curfew, the City of Vallejo experienced an unprecedented onslaught of organized criminal activity on the night of the incident.  Even with support from allied agencies, the City's police force was overwhelmed.

---

[1] Including City of Oakland, City of San Jose, City of Palo Alto, City of Santa Clara, City of Pittsburg, City of Walnut Creek, City of Lafayette, City of Moraga, City of Orinda, City of Fremont, City of San Francisco, City of Berkeley, City of Alameda, City of Hayward, City of San Leandro, City of Antioch, City of Danville, City of Pleasant Hill, City of Concord, City of American Canyon, City of Santa Rosa, City of Windsor, Napa County, Solano County, Contra Costa County, San Mateo County, and Alameda County.

Just after midnight, a police captain assisting with patrol saw a group of looters breaking into the Walgreens at 1050 Redwood Street in downtown Vallejo.  The Vallejo Police Department had received multiple 911 calls reporting criminal activity at that location and had already responded to two burglaries in progress.  The captain called for assistance and three detectives from the Vallejo Police Department's specialized crime reduction unit in an unmarked police vehicle responded.  Together, the team developed a plan to approach the parking lot from both sides to block in the looters' vehicles and take them into custody.

As the officers were pulling into the parking lot, the police captain saw one of the looters acting as a lookout with one hand to his mouth and his arm extended down holding what appeared to be a weapon—he broadcast over the radio that the suspects were "armed, possibly armed".  The officers in the unmarked SUV activated their red and blue police lights and as they entered the parking lot, looters immediately began piling into two vehicles to flee the scene.  At that moment, the officers in the SUV saw one of the suspects run from the Walgreens toward a black sedan waiting in the parking lot.  Instead of entering the vehicle, the suspect abruptly stopped and turned toward the officers in a crouching down half-kneeling position as if in preparation to shoot and moved his hands toward what appeared to be the butt of a handgun near his waist.  The officer seated in the rear of the SUV fired five shots at the suspect through the windshield.  One of those shots hit the suspect, who was found to have the butt of a hammer protruding from the front pocket of his hooded sweatshirt, and who succumbed to the injury approximately an hour later.  At the same time, the black sedan fled the scene and rammed into the police captain's vehicle, causing the airbag to deploy.

The National Guard deployed 8,000 troops throughout the State of California in late May and early June to combat the violence and criminal activity occurring around this time.  Troops were deployed to the City of Vallejo on June 2, 2020 and stayed for almost a week.

**B.     Efforts to Influence this Case through the Media by Plaintiffs and their Counsel**

Immediately after the officer-involved shooting, Plaintiffs' counsel launched a campaign to influence the media and the community from which potential jurors would be drawn.  On June 3, 2020, Plaintiffs' counsel John Burris made statements to the media that "this young man was

shot multiple times while he was on his knees and appeared to be trying to surrender" and that "you don't get to arbitrarily shoot someone in a panic, just because the situation is excitable". (Knight Decl., Exs. 2-3.)  Counsel's statement that Monterrosa was on his knees with his hands up and surrendering at the time of the incident is completely false.  It was not supported by any statements issued by the Police Department or the City, and is not supported by any of the evidence in this case.  When he initially released preliminary information about the incident to the public, the Chief of Police stated that Monterrosa was running from the Walgreens toward a black sedan when he suddenly stopped and took a kneeling position, moving his hands above his waist and revealing what appeared to be the butt of a handgun.  At no point did the Chief state or suggest that Monterrosa was putting his hands up and surrendering.

On June 5, 2020, the Guardian published an article entitled "Vallejo police kill unarmed 22-year-old, who was on his knees with his hands up", relying on similar statements by Plaintiffs' counsel Melissa Nold.  The article states:

> "When confronted by the police, he dropped to his knees and surrendered, and they fired at him," said Melissa Nold, a Vallejo civil rights attorney representing Monterrosa's family. "He wasn't doing anything to warrant it. They shot him from inside their car. What opportunity did they give him to survive that situation? … It's egregiously bad."

(Knight Decl., Ex. 4.)  Nold also told the Guardian that the Department "has a track record of initially misrepresenting the circumstances of killings, which the public later learns when video is released."  (Knight Decl., Ex. 4.)  On June 6, 2020, the San Francisco Chronicle reported further statements by John Burris that "Sean was on his knees, and he was putting his hands up — what else can you do?  He never reached for anything, he never charged for anyone, he never said anything of a threatening nature, but yet he was shot and killed by this officer. It's just flat out murder."  (Knight Decl., Ex. 5.)

Consistent with prior practice and safety concerns, the City did not immediately release the names of the involved officers following the officer-involved shooting.  On June 5, 2020, several news agencies and quasi-news agencies identified Jarrett Tonn as the shooting officer based on unnamed named sources.  (Knight Decl., Exs. 6-9.)  Officer Tonn immediately began receiving death threats and his home address was posted online.  On June 12, 2020, the Vallejo

Police Officers' Association filed a complaint for declaratory relief and for a preliminary and permanent injunction to prohibit the City from releasing the names of the involved officers pursuant to Penal Code § 832.7(b)(5)(D), which requires redaction of police records "[w]here there is a specific, articulable, and particularized reason to believe that disclosure of the record would pose a significant danger to the physical safety of the peace officer, custodial officer, or another person."  Based on the evidence presented, the Court imposed a temporary restraining order and preliminary injunction prohibiting the City from disclosing the names of the involved officers.  The injunction is currently in place and the suit is still pending.

On June 14, 2020, Plaintiffs' and their counsel participated in a protest and rally in front of City Hall.  Plaintiff's counsel John Burris again repeated false statements about the incident, reportedly saying:

> The child was on his knees. And when you're on your knees, your hands are up that is surrendering. That is not a basis to shoot and kill him. And so it is our responsibility to ensure the safety and protect Sean and his image and his life. And to make sure his family appreciates that his life has not been lost in vain. It is fundamentally wrong to shoot someone who was trying to surrender.

(Knight Decl., Ex. 10.)  At the same rally, Plaintiffs' counsel Melissa Nold reportedly stated "The last text that he sent out was to get people to sign a petition regarding George Floyd. So he was a young man that was cognizant of the social justice issues that unbeknownst to him minutes later - he was going to you know - his memory was going to be a part of changing police violence".  (Knight Decl., Ex. 10.)  Burris spoke to the San Francisco Chronicle again a few days later, making similar statements.  (Knight Decl., Ex. 11.)

On June 17, 2020, the Sacramento Bee reported statements by Plaintiff's counsel Melissa Nold:

> "The city of Vallejo has a long history of distrust in the community. We don't trust the police," Nold said. "Unfortunately police have been speculating that Black and brown people 'might do something bad' and have been killing them for decades. Nobody draws a hammer on a police officer because it's not a gun."

(Knight Decl., Ex. 12.)

On June 20, 2020, the Davis Vanguard reported that John Burris and Melissa Nold went to the Solano County District Attorney's Office to ask her to either prosecute the officer involved in the shooting or recuse herself. (Knight Decl., Ex. 13)  Less than two weeks later, District Attorney Krishna Abrams issued a statement that she would be recusing herself due to a "perceived conflict".[2]

Following the City's release of the critical incident video pursuant to AB 748, Plaintiff's counsel John Burris again made statements to the Davis Vanguard designed to impugn the Police Chief's credibility.  Burris reportedly stated, with no basis, that the Police Chief gave a description of the incident he said came from a video and is now stating there is no video showing Monterrosa at the time of the shooting. (Knight Decl., Ex. 14.)  An article published by the Davis Vanguard paraphrases and quotes John Burris as follows:

> "He said that he saw Sean running, stopping, kneeling down as if he was trying to surrender and he got shot," Burris said.  The chief purportedly said, "I've never seen anything like it."
>
> "That certainly suggests there was a video," he said.  "Today he said, there's no video.  His description was that Sean was running, he kneeled down in a crouching position, as if he was going to attack the police – who were in front of him in a pickup truck."
>
> * * *
>
> He was particularly alarmed that the chief was describing the video early and "now he says there was no video."
>
> "The question is, what information did he have that allowed him to make the statement that he made early?" he asked.
>
> What was also alarming is what was not shown in the video.  "We didn't see him running," he said.  "We didn't see him go to the ground.  We didn't see any preliminary steps that were made by the boy before he was shot."
>
> "It was a sham on the part of Vallejo PD," he said.

(Knight Decl., Ex. 14.)  Burris also made statements incredibly, and again baselessly, insinuating that the Police Department destroyed other video evidence:

---

[2] https://www.youtube.com/watch?v=QVdgk9MVZ6k

> "Vallejo, as is required by state law, has body cameras. But, according to Burris, the camera came on—but after the shooting. There was also a drone, "but the drone somehow got destroyed." Also the video from Walgreens itself was "destroyed."
>
> "Conveniently all the video tapes were destroyed or not available," he said. "We certainly didn't see any of the shooting."

(Knight Decl., Exs. 14, 21.)

On July 9, 2020, Plaintiff's counsel Melissa Nold reached out to defense counsel to specifically request that the vehicle being driven at the time of the incident be preserved as evidence, along with a drone that had been flying that evening and was collected as evidence. After consulting with the Department, it was determined that the vehicle had already been placed back into service. Defense counsel advised Plaintiff's counsel of that fact and confirmed that the drone would be preserved post-examination. (Knight Decl., ¶ 16.) Nold immediately reported to Otis Taylor of the San Francisco Chronicle that evidence of the shooting had been destroyed. (Knight Decl., Ex. 15.) Nold also gave an interview to NBC Bay Area, stating: "Now this evidence is gone forever. Once they put that truck back into service, we'll never know what condition it was in at the time that night." [3] (Knight Decl., Ex. 16.)

Following statements by the Police Department that two lieutenants had been placed on administrative leave pending an investigation into handling of the windshield, Burris gave statements to the Davis Vanguard suggesting that the Vallejo Police Officers' Association president was responsible and was engaged in trying to "misdirect" the criminal investigation. Burris further stated "The lieutenant must have thought it had significance because he destroyed it. And he's an experienced police officer." (Knight Decl., Ex. 17.) Burris also gave an interview to ABC, stating "someone did this deliberately".[4]

On July 13, 2020, the San Francisco Chronicle published an article entitled "One thing clear from video of Sean Monterrosa shooting: Public can't trust Vallejo police to be transparent". (Knight Decl., Ex. 18.) The article relied on statements from Plaintiff's counsel

---

[3] https://www.nbcbayarea.com/news/local/north-bay/sean-monterrosas-family-fears-evidence-from-his-killing-was-destroyed/2326285/
[4] https://abc10.com/embeds/video/103-0534f309-a348-468d-972c-c00b06a492c6/iframe?jwsource=cl

Melissa Nold attempting to discredit the officers' accounts of the incident ("I find it hard to believe that the officers in the front seat of the car saw what they thought (the officer who fired the rifle) saw, because why didn't they shoot?' she said. 'Why didn't the passenger shoot if they saw a guy point a gun at them? Obviously they didn't, because he didn't have a gun.").

On August 6, 2020, Plaintiffs' counsel held a forty-six-minute press conference discussing the case. During that press conference, counsel used and referred to four large demonstrative poster-board exhibits to present their case to the media. Those exhibits showed, 1) the outline of a human figure with markings showing the entry and exit points of the gunshot wound; 2) a still from body-worn camera footage of the incident showing the location of the police SUV and the suspect; 3) a still from body-worn camera footage showing the windshield post-shooting and the officer's firearm—annotated with large red circles; and 4) an overhead view of a map of the Walgreens. (Knight Decl., Ex. 1 at 22:35-28:30.) Plaintiffs' counsel referred to these exhibits as he explained, for example, where he believed the officer's vehicle was located when the shooting took place, arguing that the suspect was far away when the shooting began (Knight Decl., Ex. 1 at 37:28-37:57), and the suspect's injuries and the entry and exit wounds (Knight Decl., Ex. 1 at 23:26-24:00).



Plaintiffs' counsel discussed specific statements by the involved officer and others on scene that were made following the incident and raised arguments about the meaning and context

(Knight Decl., Ex. 1 at 15:25-16:15, 18:15-18:50).  Although the Department has not identified the involved officer, Plaintiff's counsel discussed prior officer-involved shootings and civil lawsuits that Officer Tonn was involved in—the officer they believe was the shooting officer in this case. (Knight Decl., Ex. 1 at 14:57-15:25, 16:15-18:12). Plaintiffs' counsel further discussed the evidence involved in this incident and made arguments for how that evidence should be perceived and weighed.  (Knight Decl., Ex. 1 at 15:50-16:12.)

Plaintiffs' counsel also made many statements during the press conference that were clearly intended to prejudice the media and the public against the City and the involved-officer in this case.  For example, Plaintiffs' counsel stated:

- "This case is uh, very very disturbing, uh, to us, in many many ways because the shooting took place by an officer who has this history of using deadly force under circumstances that are that are quite questionable."  (Knight Decl., Ex. 1 at :48-1:04)

- "This is a trigger-happy officer, and potentially a homicidal officer."  (Knight Decl., Ex. 1 at 15:16-15:22)

- "I don't know if you can give the benefit of the doubt to an officer who has had three prior officer-involved shootings within literally five years."  (Knight Decl., Ex. 1 at 16:15-16:23)

- "From what the Chief initially said, he was on his knees, that he was running and he stopped and went to his knees and that he was surrendering and his hands were coming up like this, and he got shot."  (Knight Decl., Ex. 1 at 26:48-26:59)

- "Because this officer in my view was a panicky guy who had been involved in three other shootings, that he was scared to death by any little thing, shooting at anything that moved with a rifle, uh, you know that's, that's unconscionable, for me." (Knight Decl., Ex. 1 at 29:03-29:18)

- "This is a situation where the police department itself should have taken this man's gun away from him awhile ago.  He should not be on the streets of Vallejo policing the community with a gun.  Desk job if you're going to keep him, but certainly keep him away from the streets and particularly against black and brown people.  Ok, find a neighborhood where there are not black and brown people, let him do that, but he clearly is not a person that should be in a black and brown neighborhood." (Knight Decl., Ex. 1 at 37:12-38:37)

- "The question though is, right now we don't know who the next person that he's going to shoot or kill is.  We don't know when that will happen, but the odds are very good there is going to be another person, and probably more than one if it keeps it up."  (Knight Decl., Ex. 1 at 38:38-38:52)

- "The Captain says 'you've been here before, it's gonna all be alright'.  That is a message that clearly had been sent to this officer before.  It's gonna be alright, don't worry about it, we've got your back, don't worry." (Knight Decl., Ex. 1 at 39:12-39:24)

Additionally, over the past five months, Plaintiffs' counsel Melissa Nold has been engaged in an inflammatory twitter campaign against the City of Vallejo and the Vallejo Police Department, though she tweeted relatively infrequently prior to the Monterrosa shooting. Among other things, she has tweeted:

- "Fire Officer Jarrett Tonn" – June 6, 2020
- "He tried to kill 3 men prior to killing Sean" – June 6, 2020
- "Yes the police department got rid of the windshield that Officer Tonn shot through, which was evidence for criminal and civil court" – July 14, 2020
- "It's time for the City of Vallejo to enter a reform plan, with a federal monitor for compliance!" – July 16, 2020
- "Why didn't the chief of police know about the destroyed evidence in the #seanmonterrosa case before I went public with it?  Asking for a few thousand friends.  If it's broke, fix it" – July 17, 2020
- Retweeting "I cannot stress enough that the Vallejo Police Department is engaged in a coverup of their murder of unarmed Sean Monterrosa.  American policing is rotten to the core.  Don't wait to speak up until it happens to somebody you know. #Justice4Sean" – July 16, 2020
- "But fyi @SpeakerPelosi Vallejo PD has been murdering people, destroying evidence and covering up their own crimes for decades. This isn't a new problem in Vallejo. Justice for... #SeanMonterrosa  #WillieMcCoy #AngelRamos #AntonBarrett #RonellFoster #MarioRomero And on and on..." – July 17, 2020
- "Vallejo PD needs a federal monitor. The end" – July 18, 2020
- "Why hasn't the Vallejo Chief of Police announced the termination of Jarrett Tonn, the officer who murdered #seanmonterrosa?" – July 21, 2020
- Retweeting "Since a Vallejo police lieutenant has already been placed on leave for destroying evidence, you have to wonder about the absence of any video of the shooting of Sean Monterrosa" – July 24, 2020
- "Sean was murdered 2 months and we have not forgotten! Justice is coming!" – August 3, 2020
- "Vallejo PD is full of full grown demons, they don't need reform they need an exorcism." – August 5, 2020

(Knight Decl., Ex. 19.)

These are just a sample of the highly prejudicial, and either false or very misleading, public statements made by Plaintiffs' counsel by way of interviews with news organizations, press releases, press conferences, tweets, e-mails, and social media postings related to this matter.

### III.

### ARGUMENT

"Few interests under the Constitution are more fundamental than the right to a fair trial by impartial jurors", and it is well established that attorneys may be enjoined from discussing a case publicly if their speech presents a substantial likelihood of prejudicing the integrity of the pending proceedings. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1032, 1074-75 (1991). "[A]s officers of the court, court personnel and attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 601, n.27 (1976). This obligation has been recognized and codified in the California Rules of Professional Conduct. Rule 3.6 provides in relevant part:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows* or reasonably should know* will (i) be disseminated by means of public communication and (ii) have a substantial* likelihood of materially prejudicing an adjudicative proceeding in the matter.

Further, statements by the lawyers involved in a case are likely to be received as especially authoritative due to their special access to information through discovery and client communications. *Gentile, supra* at 1074.

The seminal case in the Ninth Circuit addressing the imposition of a protective order limiting speech of an attorney during the pendency of a lawsuit is *Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 591 (9th Cir. 1985). *Levine* was a criminal espionage case that received significant attention from the media both locally and nationally. The defense attorneys involved in the case gave interviews to media representatives and there were a number of articles published by news agencies quoting the defense attorneys. The attorneys had made multiple comments speaking to the merits of the case and the proceedings, such as:

- "I don't think the case should ever have been brought. The initial characterization by the government that this was a major espionage case with untold damage was an incorrect assessment."

- "We've got two dummies here, no question about that…But these people should have never been taken seriously as spies. It's unrealistic to talk about the Miller

case in the same breath as other espionage cases that have come along in the last few years."

- "The dismissal of these charges means the government has now conceded that no documents were ever passed. It's also a concession that there's been no damage to national security"

*Id.* at 592-93.  The trial court in *Levine* issued a restraining order prohibiting defendant's attorneys from communicating with the media regarding the merits of the case.

On appeal, and in analyzing the order as a prior restraint on speech, the Ninth Circuit held that an order prohibiting or limiting speech by those participating in a pending court proceeding may be imposed if (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available. *Id.* at 596 (internal citations omitted).  In this instance, the Ninth Circuit found the order to be appropriate in light of the publicity surrounding the case and upheld it, but found that the prohibition of "any statements to members of the news media concerning any aspect of this case that bears upon the merits to be resolved by the jury" was overbroad.  The Ninth Circuit directed the Trial Court to determine which types of extrajudicial statements pose a serious and imminent threat to the administration of justice and to fashion an order specifying the proscribed types of statements.  *Id.* at 598-99.  By way of example, the Ninth Circuit noted that it would be appropriate to proscribe statements relating to six subjects:

> (1) The character, credibility, or reputation of a party;
>
> (2) The identity of a witness or the expected testimony of a party or a witness;
>
> (3) The contents of any pretrial confession, admission, or statement given by a defendant or that person's refusal or failure to make a statement;
>
> (4) The identity or nature of physical evidence expected to be presented or the absence of such physical evidence;
>
> (5) The strengths or weaknesses of the case of either party; and
>
> (6) Any other information the lawyer knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.

*Id.* at 599.

A protective order in this case is necessary to ensure that Defendants receive a fair trial by an impartial jury.  This matter arises from an officer-involved shooting at a time when police-related shootings and police conduct in general is receiving extra public interest and scrutiny.  Even without Plaintiffs' counsel giving media interviews, there is likely to be significant interest and press related to this case.  The conduct of Plaintiffs' counsel demonstrates their intent to spread bias and ensure that no juror will give the City of Vallejo or the involved officer a fair evaluation. Left unchecked,—it will taint the jury pool and result in incurable prejudice to Defendants.

The Burris firm's media activities pose a serious and imminent threat to Defendants' right to a fair trial and impartial jury.  Even though the criminal investigation has not been completed and Defendants have not appeared in the case, Plaintiffs' attorneys have extensively commented on the evidence and its implications.  After the City of Vallejo released body-worn camera footage of the incident, Plaintiffs' counsel made baseless statements to the media suggesting that there was no other video footage of the incident because the City had destroyed it—the City has not. (Knight Decl., Ex. 14.)  After making a specific request to the City to preserve the vehicle the officers were driving and learning that evidentiary photos had been taken and the vehicle had been placed back in service, Plaintiffs' counsel immediately told the San Francisco Chronicle that the City had destroyed evidence of the shooting, then proceeded to make (again false and baseless) statements to the media that a lieutenant was trying to misdirect the investigation by destroying the windshield.  (Knight Decl., Exs. 15, 17.)

Plaintiffs' counsel has repeatedly and falsely stated that Monterrosa was on his knees with his hands up in surrender, despite the fact that they have not seen any of the evidence relevant to what Monterrosa was doing at the time of the incident.  (Knight Decl., Exs. 2-5, 10-11, 14, 20.)  On many occasions, Plaintiffs' counsel has frequently referred to the shooting as a murder, communicated with the District Attorney to attempt to influence her decision to investigate, and repeatedly made inflammatory comments to prejudice the public against Defendants, including that: "Unfortunately police have been speculating that Black and brown

people 'might do something bad' and have been killing them for decades. Nobody draws a hammer on a police officer because it's not a gun." (Knight Decl., Ex. 12.)  The media coverage of this case is pervasive. The statements at issue here are even more extreme than in the *Levine* case, clearly supporting a finding that "the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest." *Levine* at 596.

The order requested can be narrowly drawn in this case.  As noted above, the Ninth Circuit suggested that an appropriate order in *Levine* would restrain counsel from making statements regarding:

(1) The character, credibility, or reputation of a party;

(2) The identity of a witness or the expected testimony of a party or a witness;

(3) The contents of any pretrial confession, admission, or statement given by a defendant or that person's refusal or failure to make a statement;

(4) The identity or nature of physical evidence expected to be presented or the absence of such physical evidence;

(5) The strengths or weaknesses of the case of either party; and

(6) Any other information the lawyer knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.

In addition to the above, in this case there should be an order restraining Plaintiffs' counsel from making prejudicial statements about the Vallejo Police Department as a whole.  Plaintiffs' counsel has repeatedly stated that the Vallejo Police Department is in need of a federal monitor or a consent decree, that the department is full of officers who engage in misconduct, and that the department needs to #firethefatal14.  An order restraining Plaintiffs' attorneys from making prejudicial statements about an individual officer will not be sufficient to ensure an unbiased jury if counsel continues to perpetuate the myth that the entire police department is corrupt.

No less restrictive alternatives exist in this case.  Plaintiffs' attorneys have demonstrated that they will literally attempt to try the case in the media—complete with demonstrative exhibits—if left unchecked.  Further, it is important to enter the order now to prevent further damage.  Statements to the media are particularly prejudicial in the digital age, where a juror

sitting in trial three years from now can instantly view all of the prejudicial articles published in the last five months. Trial courts have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979). While the Court cannot remedy the damage that has already been done, it can prevent further damage.

## IV.

## CONCLUSION

For all of the reasons discussed herein, Defendants respectfully request that the Court issue a protective order in this case precluding Plaintiffs' counsel from making public statements during the pendency of this action regarding (1) the character, credibility, or reputation of a party; (2) the identity of a witness or the expected testimony of a party or a witness; (3) the contents of any pretrial confession, admission, or statement given by a party or that person's refusal or failure to make a statement; (4) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence; (5) the strengths or weaknesses of the case of either party; (6) the character, credibility, or reputation of the Vallejo Police Department; and (7) any other information the lawyer knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.

DATED: October 6, 2020         Respectfully submitted,

*/s/ Katelyn M. Knight*
MEERA BHATT
KATELYN M. KNIGHT
FARRAH HUSSEIN
Attorneys for Defendants
CITY OF VALLEJO and JARRETT TONN