JOHN L. BURRIS, Esq., State Bar # 69888
BENJAMIN NISENBAUM, Esq., State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200 Facsimile: (510) 839-3882
John.Burris@Johnburrislaw.com
bnisenbaum@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEFTALI MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; NORA MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; MICHELLE MONTERROSA, individually; ASHLEY MONTERROSA, individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VALLEJO, a municipal corporation; JARRETT TONN, individually, and Vallejo police officers DOES 1-25, inclusive,<br><br>Defendants. | Case No. 2:20-cv-01563-TLN-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br>Date:   December 3, 2020<br>Time:  2:00 P.M.<br>Place:  Courtroom 2<br>Judge:  Hon. Troy L. Nunley |

i

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................ iii

Introduction and Relevant Background ....................................................................................... 1

Statement of Facts ........................................................................................................................ 3

a. Relating to the Subject Incident and Defendants' Efforts to Shape a False Public Narrative About it .................................................................................................................................... 3

b. Defendants' Factual Misrepresentations of Plaintiffs' and Plaintiffs' Counsels' Public Statements and False Alleged Intent ....................................................................................... 6

Argument ..................................................................................................................................... 7

A. Defendants Ask the Court to Violate Plaintiff and Counsels' First Amendment Rights and the California Constitution ............................................................................................................ 7

B. Plaintiffs' Counsel did not Violate the Rule of Professional Conduct ..................................... 10

Conclusion ................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Doe v. Hawaii*, 2011 WL 4954606 (D. Hawaii 2011) .................................................................. 7

*Gentile v. State Bar of Nev.,* 501 U.S. 1030 (1991) ................................................................. 8, 9

*Hurvitz v. Hoefflin,* 84 Cal.App.4th 1232 (2000) ........................................................... 7, 8, 9, 10

*Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590 (9th Cir. 1985) ............... 7, 8, 10

*Nebraska Press Assn. v. Stuart,* 427 U.S. 539 (1976) .................................................................. 9

*United States v. Wilson*, 925 F. Supp. 2d 410 (E.D.N.Y. 2013) ................................................. 11

**Rules**

California Rules of Professional Conduct 3.6 (a) ...................................................................... 10

**Constitutional Provisions**

*Cal Const, Art. I § 2* ................................................................................................................. 7

*USCS Const. Amend. 1* ............................................................................................................ 7

## INTRODUCTION AND RELEVANT BACKGROUND

On October 6, 2020, Defendants' filed a Notice of Motion and Motion for Protective Order, wherein they sought a protective order to prevent Plaintiffs' counsel from making public statements in regards to (1) the character, credibility, or reputation of a party; (2) identity of a witness or the expected testimony of a party or a witness; (3) the contents of any pretrial confession, admission, or statement given by a party or that person's refusal or failure to make a statement; (4) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence; (5) the strength and weaknesses of the case of either party; (6) the character, credibility, or reputation of the Vallejo Police Department; and (7) any other information the lawyer knows or reasonably should know is likely to be inadmissible as evidence and which would create a substantial risk of prejudice if disclosed.

Plaintiffs Oppose Defendants' superfluous and unfounded Motion for a Protective Order, which appears to be a deliberate attempt to further the City of Vallejo's intent to conceal the true details surrounding the unjustified shooting of Mr. Sean MONTERROSA, and for the purpose of silencing public outcry for unjustified killings of unarmed Black and Brown men like Mr. MONTERROSA.

Plaintiffs oppose Defendants' Motion for a Protective Order because the Motion is without merit and violates the First Amendment of the United States Constitution, as well as the California Constitution for its attempt to restrain the exercise of free speech. The Defendants' position to continue to maintain secrecy regarding the unjustified shooting of Mr. Sean MONTERROSA poses a significant and tangible public safety risk, as the City of Vallejo has already failed to preserve relevant evidence by intentionally placing the unmarked vehicle back into active duty, all before providing counsel with the opportunity to examine the vehicle and/or the windshield of the unmarked vehicle which Defendants destroyed in spite of being in receipt of Plaintiffs' demand to preserve evidence[1]. Further, the Chief of police has already provided inconsistent statements to the

---

[1] Defendant TONN is shown on body cam video firing his rifle from inside a patrol vehicle, through the windshield of the patrol vehicle, shooting and killing Decedent SEAN MONTERROSA. The angle of the shot through the windshield glass would have yielded relevant evidence as to the body position of Mr. MONTERROSA relative to the gun when Defendant

*Monterrosa v. City of Vallejo*, 2:20-cv-01563-TLN-DB
Opposition to Motion for Protective Order

1

public. The Chief initially described the shooting as happening when Mr. MONTERROSA was on his knees, with his hands at his waist level, indicating that nothing was in his hands. However, the Chief later retracted his initial statement, apparently after being prompted by the police union for Vallejo Police Officers, and instead claimed that Mr. MONTERROSA was in a crouched position as if he were attacking the patrol vehicle. It is apparent that the City of Vallejo is attempting to shield the truth on a matter that concerns the public.

Finally, Defendants entirely omit from their motion the public misrepresentations and material omissions made by their own clients, including Defendant Chief Williams, prior to the complained of statements by Plaintiffs' counsel. The press conferences held by Defendant Williams, as discussed below, offered as "that's accurate, that's factual" a claim that Mr. Monterrosa "was in a crouching, half-kneeling position. His hands were towards his waistband when turned towards the officers. The officers perceived the butt of a gun and they shot. That's accurate, that's factual[2]." Defense counsel has claimed there is no direct video of the subject-incident, so any claim by Defendant Williams, who was not a witness to the incident, as to Mr. MONTERROSA's actions are by definition not factual. Instead, this was an obvious effort to condition the public to Defendants' false narrative of the subject-incident. It is defendants who "have been quite literally trying this case in the media" (see Defendants' instant Motion for Protective Order, p. 5, lines 20-21).

In furtherance of their efforts to defame Mr. MONTERROSA and further condition members of the public against Mr. MONTERROSA and the plaintiffs in this case include, as part of their video release of the subject-incident shooting, video of vandals apparently destroying a nearby ATM security-camera, prior to the subject-incident, that could have otherwise recorded the subject-incident shooting, including the body position and conduct of Mr. MONTERROSA. While there has

---

TONN shot and killed Mr. MONTERROSA. The windshield itself would also have born on whether the windshield could have explained any alleged misperceptions by Defendant TONN that Mr. MONTERROSA was armed. The only possible weapon was a claw hammer found inside Mr. MONTERROSA's sweatshirt pocket after he was shot and killed, according to subsequent information released by Defendant CITY.

[2] See video footage of press conference held by Defendant Chief Williams on July 8, 2020, attached to Nisenbaum Decl., Exh. 2, at time 1:11. Defendants were on notice of Plaintiffs' counsel's representation of Plaintiffs, and aware there would be litigation in this matter, more than one month earlier on June 5, 2020. See Nisenbaum Decl., Exh. 3, letter of representation and demand to preserve evidence, dated June 5, 2020.

*Monterrosa v. City of Vallejo*, 2:20-cv-01563-TLN-DB
Opposition to Motion for Protective Order

2

been no specific claim that Mr. MONTERROSA was involved in that vandalism, and Defendants were unaware of that vandalism, Defendants showed this video publicly when releasing video of the subject-incident shooting in another apparent effort to implicate Mr. MONTERROSA in wrongdoing.  See Nisenbaum Decl., Exh. 2, at time 3:52.

Indeed, Defendants are the ones who have engaged in the misconduct they accuse Plaintiffs and counsel of committing.  That Defendants seek the instant protective order, recounting portions of Plaintiffs' and their counsel's statement, while totally omitting their own public media statements and misrepresentations from their moving papers constitutes an intentional effort to mislead this Court, and makes such omissions sanctionable under FRCP 11.  To that end, Plaintiffs have raised these concerns to Defendants, who in response have refused to correct their motion to include that relevant information[3].  The Court should sanction defendants for these omissions, which demonstrates the sanctimony of the hollow motions they have filed for a protective order and to change venue, which are poorly-founded[4].  Plaintiffs' motion for sanctions is concomitantly filed.

### STATEMENT OF FACTS

**a. Relating to the subject-incident and Defendants' efforts to shape a false public narrative about it.**

On June 2, 2020, the Vallejo Police Chief Shawny Williams initially described the shooting as happening when Mr. MONTERROSA was on his knees, with his hands at waist level, and a hammer tucked in his sweatshirt– meaning nothing was in his hands. See Nisenbaum Decl., Exh. 1, youtube raw video of press conference held by Defendant Williams on June 2, 2020, https://www.youtube.com/watch?v=IJLMmxMh11s, at 3:08-48).  Defendant Williams stated in that press conference:

> "Officers in the second responding unit observed a single male dressed in black standing on the east side of the building, holding what appeared to be a weapon. This individual appeared to be running toward the black sedan but suddenly stopped, taking a kneeling position, and

---

[3] The meet and confer by email is attached as Nisenbaum Decl., Exh. 4.
[4] Defendant CITY is evidently involved in significant litigation with the Vallejo Police Officers' Association ("VPOA"), regarding the disclosure of Defendant TONN's identity and compliance with the CITY's disclosures generally required under state law. As recounted in Plaintiffs' counsel's meet and confer with defense counsel, it seems likely the instant motions were filed at the behest of the VPOA. Regardless, such demand does not a well-founded motion make.

*Monterrosa v. City of Vallejo*, 2:20-cv-01563-TLN-DB
Opposition to Motion for Protective Order

3

placing his hands above his waist, revealing what appeared to be the butt of a handgun. Investigations later revealed that the weapon was a long 15-inch hammer tucked into the pocket of the sweatshirt. Due to this perceived threat, one officer fired his weapon 5 times from within the police vehicle, through the windshield, striking the suspect once, fatally wounding the suspect."

Chief Williams later changed the initial account that he made to the media, apparently at the prompting of the police union for Vallejo Police Officers, which had published its own press release on the incident three days later, on June 5, 2020 (Nisenbaum Decl., Exh. 2, https://www.vallejopoa.org/news/vallejo-police-officers-association-responds-to-officer-involved-shooting/?id=d5941704-f982-4efc-91b3-f31ad3dd7db3) contradicting Chief Williams' initial account. The VPOA statement claimed in its press release (Nisenbaum Decl., Exh. 2):

> "Rather than continuing his escape, Mr. Monterrosa chose to engage the responding officers. Mr. Monterrosa abruptly pivoted back around toward the officers, crouched into a tactical shooting position, and grabbed an object in his waistband that appeared to be the butt of a handgun. At no time did Mr. Monterrosa make any movements consistent with surrendering."

Chief Williams then revised the initial public statement on at a second press conference on July 8th, now changing his account to align with the statement made by the police union's claims that Mr. MONTERRROSA was in a crouched position as if he were attacking the patrol vehicle Defendant TONN fired his AR-15 from (Nisenbaum Decl., Exh. 4; https://www.youtube.com/watch?v=tNTs5-A2yS4&t=129s at 1 min:30 sec-2 min:14 sec). Defendant WILLIAMS' revised account on July 8th tracked the VPOA statement, contradicted his initial account, and he even denied giving the contents he was recorded giving at the June 2nd press conference quoted above, as follows, in response to a statement made by Plaintiffs' counsel that a reported used to question the chief with (illustrating all the more reason why the First Amendment is so important in this case):

> "Q: According to the attorney for the Monterrosa family, you had initially given a statement saying that Sean Monterrosa was kneeling as if surrendering and the police union later stated that he was in a shooting position and that your description of what happened changed. What was your initial description based on if not video?
> WILLIAMS: So, to clarify, that's inaccurate. To clarify he was in a crouching, half-kneeling position his hands were toward his waistband when he turned toward the officers. The officers perceived a butt of a gun and they shot. That's accurate. That's factual."

It appears on listening to the audio that Defendant WILLIAMS was asserting that Plaintiffs'

contentions to the reporter were inaccurate.  Of course, a person kneeling with his hands above his waist (and considering the other information known, had nothing in his hands, because he sure didn't put the hammer back in his sweatshirt pocket after he was shot, nor is it conceivable that a person getting on their knees is about to attack a police car, this wasn't Thor's hammer) is a description of a person surrendering, whether or not Defendant WILLIAMS intended it that way. But the critical point in the July 8th statement is that now Defendant WILLIAMS describes Mr. MONTERROSA crouching, half-kneeling, with his hands toward his waistband "when he turned toward the officers." While the Chief claimed it was premature to reach any factual or legal conclusion, that is exactly what he did at both the June 2nd and July 8th press conferences.  They were just different factual conclusions, and the later assertion now lines up with the VPOA assertions.  Notably, Mr. Monterrosa was not on video, so any representation of accuracy ("that's accurate, that's factual") cannot be made by Defendant WILLIAMS.

After Mr. MONTERROSA's tragic death, the Vallejo Police Department placed the unmarked vehicle involved in the shooting back into active duty without allowing the plaintiffs an opportunity to inspect relevant evidence from the unmarked vehicle. The City knew or should have known that the windshield that Defendant TONN fired his AR-15 from would serve as substantially relevant evidence to the plaintiffs. Additionally, the City knew or should have known that the unmarked vehicle would serve as substantially relevant evidence to the plaintiffs. However, the City intentionally destroyed/altered this evidence.

Further, the Vallejo Police Department was well-aware that Defendant TONN has a history of police shootings since he joined the Vallejo Police Department. Defendant TONN has been a shooting officer in at least three other officer-involved shootings within the past five years. Plaintiffs allege on information and belief that Defendant TONN was never disciplined and never subject to re-training or remediation following his three other officer-involved shootings. This was evident in the Vallejo police captain's own words at the scene to Defendant TONN after the shooting: "You're gonna be alright, man. You've been through this before."

Defendants' misplaced references to other activities by other people and other agencies, and their assertion the National Guard deployed 8,000 in the State of California in late May to early

June, including in Vallejo starting the day before the shooting, has no bearing on the instant motion or on the shooting and killing of Mr. MONTERROSA. As with the playing of video footage unrelated to the shooting and killing of Mr. MONTERROSA, these assertions and the instant-motions for a protective order and change of venue are straw men intended to substitute for the conscience-shocking shooting and killing of decedent Mr. MONTERROSA.

### b. Defendants' Factual Misrepresentations of Plaintiffs' and Plaintiffs' Counsel's Public Statements and Falsely Alleged Intent.

Defendants advance an array of media accounts and their own cynical interpretation of Plaintiffs' intentions as facts. As with Defendant WILLIAMS, Defendants assert factual knowledge of the subject-incident (i.e. at p. 8, lines 3-10: claiming a statement by Plaintiffs' counsel that Mr. Monterrosa was on his knees and trying to surrender with his hands up "is completely false. It was not supported by any statements issued by the Police Department or the City, and is not supported by any of the evidence in this case." But in the next sentence acknowledging that according to Defendant WILLIAMS' press statements, Mr. Monterrosa had gotten on his knees just before he was shot.)

Of course, Defendants have no idea what Plaintiffs' counsel's own investigation has revealed, and there is no evidence in this case yet; no discovery has taken place. This motion, and the representations made by counsel are just another example of Defendants seeking to control the public narrative of the subject-incident.

Defendants further misrepresent by omission factual information to this Court. At page 11, lines 6-16, Defendants claim that on July 9, 2020, Melissa Nold, who no longer is with Plaintiffs' counsel's office, reached out to them to specifically ask that the vehicle being driven at the time of the incident be preserved as evidence, along with a drone that was flying in the area. Yet Defendants fail to inform the Court of Plaintiffs' Counsels' June 5, 2020 correspondence to Interim City Attorney Randy Risner, with the subject heading: "Re: Preservation of Evidence: Sean Monterrosa", and demanding the preservation of all evidence related to "this incident." (See Nisenbaum Decl., Exh. 6.) Clearly, the demand to preserve evidence would include the windshield Defendant TONN fired his gun through multiple times. (See Nisenbaum Decl., Exh. 3; Nisenbaum Decl., Exh. 2, at

times 5:07, and 7:03).

Frankly, the list goes on and on. Defendants' claims against Ms. Nold are themselves meritless: She is not an attorney associated with the instant case any longer. But even if she were, Defendants never once acknowledge that attorneys have First Amendment rights, and the bar is high to abridge those rights. Defendants' failure to even address this reality is another tacit acknowledgement of the baselessness of the instant motion. Indeed, Defendants' position appears to be: Their clients can and have spoken and can (mis)represent any and all facts, and Plaintiffs must be silent in the face of it. Defendants offer no evidence of prejudice on their own assertions. Defendants have offered no survey of potential jurors or a jury pool that might be prejudiced; they fail to acknowledge the public interest served by the accurate dissemination of non-privileged information by Plaintiffs' counsel, and act as if only their own public statements are permitted. The First Amendment and case law squarely protects Plaintiffs' counsel's conduct and statements. Defendants should be sanctioned under Rule 11 for their frivolous motions for a protective order and to change venue.

**ARGUMENT**

**A. DEFENDANTS ASK THE COURT TO VIOLATE PLAINTIFFS' AND COUNSEL'S FIRST AMENDMENT RIGHTS AND THE CALIFORNIA CONSTITUTION.**

The Defendant's Motion for a Protective Order infringes on the Plaintiff's First Amendment right to free speech. The right to exercise free speech is a vital privilege in modern society. The First Amendment to the United States Constitution provides, Congress shall make no law … abridging the freedom of speech, or of the press." *USCS Const. Amend. 1*. The California Constitution further states that, "Every person may freely speak, write and publish his or her sentiments, on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press" *Cal Const, Art. I § 2* (1980). Orders which restrict or preclude a citizen from speaking in advance are known as "prior restraints" and are disfavored and presumptively invalid. *Hurvitz v. Hoefflin,* 84 Cal.App.4th 1232 (2000); see also *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590 (9th Cir. 1985), and *Doe v. Hawaii*, 2011 WL 4954606 at *2 (D. Hawaii 2011). The danger of prejudice must be balanced against the competing

First Amendment rights of the attorneys publicizing the case:

> "Because "[t]he potential for injury to the integrity of the judicial process is significant in cases involving trial publicity," a court may restrict publicity in certain circumstances. *Levine v. U.S. Dist. Ct. for the Dist. of Cal.,* 764 F.2d 590, 595, 597 (9th Cir 1985). However, **"[o]nly the occasional case presents a danger of prejudice from pretrial publicity."** *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1064 (1991) To determine whether a case presents a danger of prejudice from pretrial publicity, a court must balance the interests of ensuring the integrity of the judicial process, including the right to a fair and impartial jury, with the competing First Amendment rights of the attorneys publicizing the case." (emphasis added.)

Gag orders on trial participants are unconstitutional as prior restraints on speech, in violation of the First Amendment and the State Constitution, unless (1) the speech sought to be restrained poses a clear and present danger or serious and imminent threat to a protected competing interest, (2) the order is narrowly tailored to protect that interest; and (3) no less restrictive alternatives are available" *Hurvitz, Id.* at 1238.

*Hurvitz v. Hoefflin*, was an action between two cosmetic surgeons regarding various tort allegations arising from the plaintiff's remarks to a news reporter concerning the allegations of the defendant's inappropriate behavior with patients, including celebrities. *Id*. Former employees filed a separate declaration naming patients of the defendant's wrongdoing. *Id*. The contents of the declaration were widely reported to the media. *Id*. The defendant moved to shorten time for a protective order to prevent any further disclosure of confidential information concerning patients of any of the physicians involved in the five related cases. The trial court's written order, contained findings that expressly defined, "confidential information" as "any information which would identify any patient, including but not limited to the patient's name, or initials, occupation, physical attributes, and/or distinguishing features." *Id,* at 1240. It specifically prohibited revealing, stating or in any manner releasing or publishing any confidential information without prior court approval, whether the information was obtained via discovery or independently. On appeal, the Court of Appeals rejected the trial court findings, in holding that barring disclosure of certain information, whether obtained through discovery or otherwise, is an unconstitutional restraint on speech. *Id* at 1236. The Court of Appeals further held that the trial court based its order in part on its finding of needless dissemination of what it deemed to be privileged information that might prejudice potential

jurors. *Id.* However, the Court of Appeals opined that, "where a party contends his or her right to a fair trial has been or will be compromised by pretrial publicity, the law has long imposed on that party the burden of producing evidence to establish the prejudice. *Id.* It is not enough for a court to decide that the fair trial right may be affected by the exercise of free speech. *Id.*

This case is factually similar to the Plaintiffs' position because in *Hoefflin*, the names of the patients were deemed public content from the declaration filed by former employees. In this case, Plaintiffs' counsel only learned that Defendant TONN was the shooting officer through a published media report (attached as Nisenbaum Decl., Exh. 5) to the accompanying declaration of Benjamin Nisenbaum: "Exclusive: Vallejo Officer Who Killed SF Man Had Three Prior Shootings As A Policeman", San Jose Mercury News, June 5, 2020), which identified Defendant TONN and the shockingly high number of prior Officer-Involved Shootings in which he has shot at people. This is Defendant TONN's fourth Officer-Involved Shooting. Describing him as "trigger happy" has a powerful factual basis and is mild in place of what else he could also reasonably be described as.

Furthermore, as Justice Kennedy wrote in *Gentile, supra* at 2725:
"Public awareness and criticism have even greater importance where, as here, they concern allegations of police corruption, see *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 606, 96, S.Ct. 2791, 2825, 49 L.Ed.2d 683 (1976) (Brennan, J., concurring in judgment)"

Defendant TONN, having fired his gun at people now on four different occasions since 2015, presents a compelling public safety concern weighing heavily in favor of Plaintiffs' counsel's First Amendment rights in speaking out about his conduct, in this case and others. The only thing "occasional" about this case are the circumstances of the shooting (from within a police car through its windshield at a person who at most possessed a hammer), and the fact that the shooter has shot so many times in such a short period of time, presenting an obvious continuing threat to the public. It would be against the public interest to prevent Plaintiffs' counsel from warning the public of the danger they face in Defendant TONN's continued employment as a police officer.

Plaintiffs in this matter have only addressed information that is already public content, and has been widely shared, such as the name of the officer who fatally shot Mr. MONTERROSA, inconsistent statements that were made by Chief Williams and the union for the Vallejo Police Officers, and evidence that was destroyed without Plaintiffs' counsel being able to inspect, in direct

*Monterrosa v. City of Vallejo*, 2:20-cv-01563-TLN-DB
Opposition to Motion for Protective Order

9

violation of Plaintiffs' demand to preserve evidence.

Thus, similar to *Hoefflin,* these statements became public record like the names disseminated in the declaration. The court should consider the holding in *Hoefflin* in finding that the Defendants' Motion for Protective Order would violate both the United States Constitution and the State Constitution as a restraint on free speech.

Moreover, Defendants' Motion for a Protective Order fails to satisfy the three-prong test outlined in both the *Levine* and *Hoefflin* cases. The Defendants' have failed to demonstrate how the Plaintiffs' counsel poses a clear and present danger of imminent threat when Plaintiffs' counsel is merely exercising a fundamental right to free speech. Plaintiffs' counsel has not made any public threat to any defendant identified in this matter, nor were they responsible for identifying Defendant TONN. There is no evidence Plaintiffs' counsel has prejudiced the Defendants' in their access to a fair trial by exercising the right to free speech: Everyone has their own opinions about police shootings, and in the years between now and when a trial might happen in this case, Plaintiffs' and their counsel's public statements are simply one more opinion in the public realm, and if there comes a point when this case is tried, voir dire of the jury would weed out those who have formed too solid a pre-existing opinion one way or the other. And, Defendants' have made their own competing statements. They wrongfully ask the court for an order keeping the public field to themselves, eliminating Plaintiffs and counsel from it.

Defendants cannot meet their burden, and the fact that defendants failed to inform the Court of their own media efforts to mislead the public demonstrates the bad-faith of their instant motion for a protective order.

**B. PLAINTIFFS' COUNSEL DID NOT VIOLATE THE RULES OF PROFESSIONAL CONDUCT**

The Defendants' contend that Plaintiffs' counsel is attempting to litigate this case in the court of public opinion. In addition, the Defendants contend that Plaintiff's counsel violated the California Bar's Standards of Professional Conduct. California Rules of Professional Conduct 3.6 (a), prohibits a lawyer from making statements to the media that the lawyer "knows or reasonably should know" will have "a substantially likelihood of materially prejudicing an adjudicative proceeding.

In *U.S. v. Wilson*, the court denied the party's request to restrain an opposing party's ability to speak with the media regarding a case. *United States v. Wilson*, 925 F. Supp. 2d 410 (E.D.N.Y. 2013). The court further stated that, "before the court may impose any sort of 'gag order,' it must, among other things, determine whether other available remedies would effectively mitigate the pretrial publicity." *Id* at 412. The court addressed several alternative remedies such as "searching voir dire' and 'empathic jury instructions.' *Id*. The Defendants' attempt to silence Plaintiff's counsel raises serious First Amendment issues. Defendants' provide no compelling case law to support their contentions of how defendants will be prejudiced; instead they simply assert that they will be prejudiced. Defendants describe no plausible argument worthy of suppressing counsel's First Amendment rights. Any potential prejudice to Defendants (or Plaintiffs, who have not sought a gag order against Defendants in spite of Defendants' public disinformation campaign) can be resolved easily during voir dire. In Plaintiffs' counsel's experience, and likely the Court's experience, very few potential jurors in the venire will have any awareness of this case or any media accounts even given the media coverage to date. Defendants cry wolf in simply asserting that the jury pool will be tainted or otherwise cause incurable prejudice to Defendants:  They have produced even less evidence of a tainted jury pool than the Trump re-election campaign has produced of alleged vote fraud (and the Trump re-election campaign has not identified a single fraudulent vote as of the date of this writing).  In reality, it appears Defendants don't like or are offended by Plaintiffs' public statements, but Plaintiffs' public statements are squarely protected under the First Amendment.

Defendants appear to blame Plaintiffs' counsel for any and all outrage related to the tragic death of Mr. MONTERROSA. However, all media coverage of this incident included body camera footage that is part of public records. The body-cam video footage clearly demonstrates that Defendant TONN acted reckless and unreasonably and that he stated after fatally killing Mr. MONTERROSA, "I'm Stupid" or "fucking stupid." Additionally, when the video footage continued, Defendant TONN concerned about himself said: "This is not what I fucking needed tonight." This video coverage speaks for itself and the ownership and prejudice related to the release of this body-cam video was not within Plaintiff's control.

All information provided to the media was publicly available. Any prejudice credited to

media coverage is the natural human response to watching yet another Black or Brown man tragically killed by law enforcement. Plaintiffs' counsel cannot shoulder responsibility for any prejudice that arises from viewing publicly available videos, public inconsistent statements made by Chief Williams, nor the scrutiny that officers are receiving from police-related shootings. Defendants' cannot prove that Plaintiffs' counsel's words caused any prejudice, as opposed to body-cam footage and inconsistent statements by police officials, and have identified no indication of prejudice. Defendants' have not demonstrated any material prejudice that would subject them to an unfair trial. There are reasonable alternatives, such as voir dire, that the Defendant has failed to seek before attempting to silence Plaintiffs' counsel First Amendment rights.

Plaintiffs' counsel has not violated any ethical rule by commenting appropriately on this matter of public concern. Defendants' Motion for a Protective Order omits their own public statements and disinformation campaign. Defendants complaint that Plaintiffs used "demonstrative poster board exhibits", but Defendants themselves released the video footage of not just the subject-incident, but also totally gratuitously released video footage of vandals damaging video surveillance camera, even though that video was tangential to the subject-incident shooting.  Again, Defendants have done what they accuse Plaintiffs of doing, and they ask this Court to gag Plaintiffs? The insincerity of their motion for a protective order is sanctionable.

## CONCLUSION

Defendants' have no plausible argument for their Motion for a Protective Order. Any potential prejudice that is experienced by the Defendants is a direct result of material that was made public by them. Defendants' have not demonstrated any material prejudice or cited to any authority that suggests Plaintiff's counsel should be penalized for exercising their First Amendment rights. Defendants' Motion for a Protective Order should be denied in full.

Defendants attempted to mislead this court by omitting their own public disinformation campaign from their instant motion, and have the gall to try to gag Plaintiffs' counsel without even acknowledging their own public efforts to the Court. Defendants have not offered any indication of prejudice, only assertions. This Court should sanction defendants under Rule 11 for their misleading effort to improperly violate Plaintiffs' and Plaintiffs' counsels First Amendment rights.  To that end,

Plaintiffs have concurrently filed a motion for sanctions against Defendants.

Dated:  November 19, 2020                           LAW OFFICE OF JOHN L. BURRIS

                                                                        /s/ *Benjamin Nisenbaum*
                                                                        Benjamin Nisenbaum
                                                                         Attorney for Plaintiffs