**JOHN L. BURRIS ESQ., SBN 69888**
**BENJAMIN NISENBAUM, ESQ., SBN 222173**
**JAMES COOK, ESQ., SBN 300212**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120f
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
John.Burris@johnburrislaw.com
Ben.Nisenbaum@johnburrislaw.com
James.Cook@johnburrislaw.com

Attorneys for Plaintiffs
Neftali Monterrosa, et al.

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEFTALI MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; NORA MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; MICHELLE MONTERROSA, individually; ASHLEY MONTERROSA, individually, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF VALLEJO, a municipal corporation; JARRETT TONN, individually, and Vallejo police officers DOES 1-25, inclusive, <br><br> Defendants. | CASE NO.: 2:20-cv-01563-TLN-DB <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR INTRA-DISTRICT TRANSFER OF VENUE** <br><br> Date:  December 3, 2020 <br> Time: 2:00 P.M. <br> Place: Courtroom 2 <br> Judge: Hon. Troy L. Nunley |

# TABLE OF CONTENTS

Introduction ............................................................................................................. 1

Legal Analysis ......................................................................................................... 2

1. Legal Standard for Motion for Change of Venue ............................................... 2

2. Analysis of the Section 1404(a) Factors Favors no Change in Venue ............... 4

3. Media Coverage not Sufficient Extreme to Invoke the Presumed Prejudice Rule ...................... 5

    a. The Evidence Does Not Show that the Community has been Saturated ............................... 5

    b. The News Accounts are Primarily Factual .......................................................... 6

    c. Statements of Plaintiffs' Counsel do not Support a Presumption of Prejudice Warranting Change of Venue ............................................................................. 8

    d. Defendants' Assertion that this Court Will be Unable to Seat Impartial Jurors is Pure Speculation ............................................................................................ 9

Conclusion ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Ainsworth v. Calderon*, 138 F.3d 787 (9th Cir. 1998) .................................................................3, 6

*Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007) ..............................................................................10

*Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005) ...................................................................3, 6, 8

*Gotbaum v. City of Phoenix*, 617 F. Supp.2d 878 (D. Ariz. 2008)...........................................7, 9, 10

*Harris v. Pulley*, 885 F.2d 1354 (9th Cir. 1988).........................................................................3, 7, 10

*Hayes v. Ayers*, 632 F.3d 500 (9th Cir. 2011) .................................................................................... 5

*Irvin v. Dowd*, 366 U.S. 717 (1961).................................................................................3, 5, 6, 10

*Jones v. GNC Franchising, Inc*., 211 F.3d 495 (9th Cir. 2000) ......................................................... 3

*Los Angeles Memorial Coliseum Commission. v. National Football League*, 89 F.R.D. 497
(C.D.Cal. 1981)...........................................................................................................................3, 4

*Los Angeles Memorial Coliseum Commission v. National Football League,* 726 F.2d 1381
(9th Cir. 1984) ................................................................................................................................3, 8

*Martinez v. City of Fresno*, 2009 WL 2151907 (E.D. Cal. 2009) ....................................................... 8

*Narten v. Eyman*, 460 F.2d 184 (9th Cir. 1969) ................................................................................. 4

*Oliver v. City & Cty. of San Francisco*, 2009 WL 10736493 (N.D. Cal. 2009) ...........................5, 10

*Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088 (N.D. Cal. 2013) ..................................4, 5

*Raisman v. United States Olympic Committee*, 2018 WL 6067254 (N.D. Cal. 2018) ........................ 4

*Rideau v. Louisiana*, 373 U.S. 532 (1966) ........................................................................................ 5

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) ......................................................................................10

*United States v. Rewald*, 889 F.2d 836 (9th Cir. 1989) ..................................................................... 5

*Van Dusen v. Barrack*, 376 U.S. 612 (1964).................................................................................... 4

*Washington Pub. Utilities Group v. U.S. Dist. Court for Western Dist. Of Washington*, 843 F.2d 319
   (9th Cir. 1987)................................................................................................................................ 3

*Welenco, Inc. v. Corbell*, 2014 WL 130526 (E.D. Cal. 2014)............................................................ 4

Plaintiffs' Oppositon to Defendants' Motion for Intra-District Transfer of Venue
*Neftali Monterrosa, et al. v City of Vallejo et al.* Case No. 2:20-cv-01563-TLN-DB
iii

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................................2, 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION AND FACTUAL BACKGROUND

On June 2, 2020, at about 12:37 a.m., Defendant Jarrett Tonn, a Vallejo Police Officer, killed 22-year-old Decedent Sean Monterrosa in his fourth Officer-Involved Shooting in 5 years, when Mr. Monterrosa was unarmed, on his knees. Defendant Tonn was holding his AR-15 semi-automatic rifle at the ready while in the backseat of an unmarked Vallejo Police Department vehicle. Mr. Monterrosa was suspected of possibly looting, (a property crime), but when shot and killed, he had nothing in his hands. No warnings were given that lethal force, or any force, would be used. The unmarked police vehicle was still moving forward when Defendant Tonn started shooting Mr. Monterrosa, and it stopped around the time Defendant Tonn fired his fifth and last shot. All shots were fired through the front windshield of the unmarked vehicle, and those shots struck and killed Mr. Monterrosa. Despite Plaintiffs' timely request for Defendants to preserve the evidence in this matter, Defendant had the windshield of the unmarked police vehicle repaired and had the vehicle back in use. (See Plaintiffs' request for preservation of evidence attached to the Nisenbaum Declaration, Exhibit 6.) At a press conference called by Defendant City, Chief Williams described the shooting as happening when Mr. Monterrosa was on his knees, with his hands at waist level— meaning nothing was in his hands. (See VPD June 2, 2020 press conference attached to the Nisenbaum Declaration, Exhibit 1.) However, Chief Williams changed his initial media representations of the shooting, apparently at the prompting of the police union for Vallejo Police officers, which had given its own media statement contradicting Chief Williams' initial account. (See VPOA's June 5, 2020, press release attached to the Nisenbaum Declaration, Exhibit 2.) Chief Williams then revised his public statement to line up with the police union's claims that Mr. Monterrosa was in a crouched position as if he were attacking the patrol vehicle Defendant Tonn fired his AR-15 from. (See VPD July 8, 2020 press release and press conference attached to the Nisenbaum Declaration, Exhibits 3 and 4.)

Plaintiffs filed a complaint against Defendants City of Vallejo and Officer Tonn for the unlawful and unconscionable deadly shooting of Decedent Monterrosa. In addition to moving to dismiss the complaint, Defendants move for a change of venue, specifically asking this Court to

transfer this case to the Fresno division of the Eastern District. Defendants claim that pre-trial publicity from this case has becoming "widely politicized" has incited public passion rendering any jury impartial and will render the future trial in this matter unfair. Defendants base their motion for a change of venue on pure speculation that the modest media coverage of the underlying incident, which happened to occur during a nationwide discussion on law enforcement interaction with communities of color, will prejudice the entire jury pool from the Sacramento division of the Eastern District such that they an impartial jury cannot be seated through traditional means. Indeed, the modicum of press coverage identified by Defendants is not inflammatory and merely reports the news.

By their motion, Defendants are also being duplicitous, because they fail to inform the Court of the press conferences they held or of the press releases they and the Vallejo Police Officers' Association issued. Several of the news articles identified by Defendants were published on the heels of Defendants' solicitation of press attention, and most of the media coverage contains statements from the Chief of Police or other VPD sources, which undoubtedly were supplied by Defendants. Defendants do not appropriately cry foul from media coverage that they themselves conjured and took full advantage of by using as a platform to present their own propaganda justifying their deplorable and violative conduct in this matter.

Plaintiffs' Opposition to Defendants' Motion for is based on this Memorandum of Points and Authorities, the Declaration of Benjamin Nisenbaum in Support of Plaintiffs' Opposition to Defendants' Motions for Gag Order and Change of Venue and the Exhibits attached thereto, and on any arguments as may be made at the hearing on this matter.

## LEGAL ANALYSIS

### A. Legal Standard for Motion for Change of Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under section 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal citation omitted). "The standards governing a change of venue ultimately derive from the due process clause of the fourteenth amendment which safeguards a defendant's sixth amendment right to be tried by "a panel of impartial, 'indifferent' jurors." *Harris v. Pulley*, 885 F.2d 1354, 1363 (9th Cir. 1988) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). The moving party bears the burden to show that transfer is appropriate. *Los Angeles Memorial Coliseum Commission. v. National Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981) (*Coliseum I*), aff'd, 726 F.2d 1381, 1399 (9th Cir. 1984) (*Coliseum II*).

"[A] court must grant a motion to change venue 'if prejudicial pretrial publicity makes it impossible to seat an impartial jury.'" *Daniels v. Woodford*, 428 F.3d 1181, 1210 (9th Cir. 2005) (quoting *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998)). "A decision whether a change of venue is compelled by pervasive prejudicial publicity concerns an exercise of discretion." *Washington Pub. Utilities Group v. U.S. Dist. Court for Western Dist. Of Washington*, 843 F.2d 319, 324 (9th Cir. 1987). Courts considering a change of venue based on pretrial publicity have recognized two kinds of jury prejudice: presumed prejudice, where the record demonstrates that the community has been saturated with prejudicial and inflammatory media publicity, and actual prejudice, where jurors actually called for the trial demonstrate that they possess partiality and hostility that cannot be laid aside. See *Harris*, 885 F.2d at 1363. Only where a jury is "utterly corrupted by press coverage" may unfavorable press coverage justify a change of venue. *Coliseum II*, 726 F.2d at 1400 (internal citation omitted); see also *Daniels*, 428 F.3d at 1211 (holding that in determining whether pretrial publicity prevents a criminal defendant from having a fair trial, a court may consider whether there was a barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion and whether the media accounts contained inflammatory or prejudicial material not admissible at trial).

Because this motion comes before the start of jury selection and trial (or the commencement of fact discovery for that matter), the Defendants must demonstrate presumed prejudice. The presumed prejudice principle is rarely applicable, and is reserved for an "extreme situation." *Harris*, 885 F.2d at 1361 (internal citations and quotations omitted). Additionally, courts are reluctant to

presume prejudice too early in a case. As a general rule, "the effect of pretrial publicity can 'be better determined after the voir dire examination of the jurors.'" *Narten v. Eyman*, 460 F.2d 184, 187 (9th Cir. 1969) (citation omitted).

**B. Analysis of the Section 1404(a) Factors Favors no Change in Venue**

In deciding a transfer motion, this Court must consider (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; and, (4) the interests of justice. *Coliseum I*, 89 F.R.D. at 499. "[T]he purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted).

Contrary to Defendants' scant analysis, the first three Section 1404(a) factors favor Plaintiffs. Plaintiffs' initial choice of forum usually receives some weight; and, here, Plaintiffs chose the forum in which the injuries occurred. See e.g., *Raisman v. United States Olympic Committee*, 2018 WL 6067254 (N.D. Cal. 2018). Defendants have not presented any evidence that judicial economy regarding these factors is best served by a change of venue. With the trial in Sacramento, Plaintiffs who live in San Francisco, already face over an hour commute each day, and Defendants who work in the City of Vallejo face a much shorter commute. Of course, trial in Fresno will require Plaintiffs and Plaintiffs' counsel to incur the expense of hotel stays, as 3-hour plus commute each way is untenable. *Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1095 (N.D. Cal. 2013) ("Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify[.]"). Defendants have determined, without the benefit of any fact discovery, that most witnesses are police officers for whom travel is not an issue. Of course, if the parties unearth lay witnesses and procure subject-matter experts, requiring them to travel to Fresno will be costly and perhaps serve as an impediment to witness cooperation. See *Welenco, Inc. v. Corbell*, 2014 WL 130526, at *7 (E.D. Cal. 2014) ("Convenience of nonparty witnesses is often the most important factor in the section 1404(a) calculus.").

Moreover, "[p]ublic interest factors also weigh in favor of denying a change of venue here, such as the local interests in deciding local controversies, and the need to avoid burdening citizens in an unrelated forum with jury duty." *Id.* (citing *Park*, 964 F.Supp.2d at 1096).

### C. Media Publicity not Sufficiently Extreme to Invoke the Presumed Prejudice Rule

The gravamen of Defendants' motion for change of venue is that pretrial publicity is so prejudicial and pervasive that change of venue is required in the interest of justice. Not so.

#### a. The Evidence Does Not Show that the Community Has Been Saturated

Jury pool members are presumed to be impartial. See *Irvin*, 366 U.S. at 723. To overcome this presumption, Defendants must show saturating and inflammatory press coverage that would reach virtually all members of the jury pool and lead a court to conclude that the pool as a whole has been adversely influenced. *Hayes v. Ayers*, 632 F.3d 500, 508 (9th Cir. 2011); see e.g., *Irvin*, 366 U.S. 717 (occurring in a rural community in which the trial was held had been subjected to a barrage of inflammatory publicity immediately prior to trial, including the defendant's confession to murder and his unaccepted offer to plead guilty); *Rideau v. Louisiana*, 373 U.S. 532 (1966) (occurring in a community of 150,000 residents where defendant's 20-minute confession was televised thrice). The showing made by Defendants does not reach this threshold. Far from a barrage, Defendants present 33 Exhibits (Document 7-1) most of which were published within weeks of the shooting and/or on the same day as Defendants held press conferences or issued press releases regarding the case. See, *Oliver v. City & Cty. of San Francisco*, 2009 WL 10736493, at *1–3 (N.D. Cal. 2009) (finding "the twenty print articles and twelve television reports that Defendants reference are a far cry from the media barrage that might warrant a change of venue"); *United States v. Rewald*, 889 F.2d 836, 864 (9th Cir. 1989) (rejecting Defendant's claim that pretrial publicity was prejudicial because the 295 media articles identified by Defendant were factual in nature, not broadcast or published in close proximity to the trial, not in a small or rural community, and did not result in a circus atmosphere as a result of press intrusions).

The Eastern District of California is comprised of over 34 counties. (USMS), U.S. Marshall Service. "U.S. Marshall Service Home Page, www.usmarshals.gov/district/ca-e/general /area.htm.

Analysis of just three of those counties demonstrates its immense diversity. In 2019, the United States Census reported that Sacramento County had approximately 1.5 million residents. Nearly, 63% of those residents were white, 23% were Hispanic or Latino, 10% were Black and 1.5% were American Indian or Alaska natives. Further, roughly 80,000 members of the Sacramento County population were veterans and 87.4% of resident who were twenty-five years old and above had a high school or graduate level education. In 2019, Solano County had a population estimated at 447,643 in which, 59.6% of the residents were white, 14.8% were Black, 16.2% were Asian, and 1.3% were American Indian and Alaska natives. Napa County reportedly had 762,148 residents in which 66% was white and approximately had 27.7% of racially diverse minorities, and at least 30,000 members of the population were veterans. These counties alone have a population of 2,709,791. The estimated total population in the Eastern District is approximately 8,123,480. 41 The Eastern District of California has a diverse and large population where parties can screen fair and impartial jurors during voir dire proceedings.

Defendants' claim that pretrial publicity has saturated the Eastern District; however, they cannot prove that media attention has permeated beyond the southern portion of Solano County. Indeed, most articles they identify were published by Bay Area news outlets. Defendants have failed to prove the requisite saturation.

### b. The News Accounts are Primarily Factual

Again, to overcome the presumption that jury pool members are impartial, Defendants must show saturating and inflammatory press coverage. See *Irvin*, 366 U.S. at 723. The Ninth Circuit has determined that when news accounts are primarily factual, such accounts tend to be less inflammatory than other accounts, such as editorials or cartoons. *Daniels v. Woodford*, 428 F.3d at 1211 (citing *Ainsworth*, 138 F.3d at 795). The majority of the articles identified by Defendants are barely unfavorable, and they certainly do not rise to the level of inflammatory media coverage. The news articles identified by Defendants are largely factual, in that they detail: the events leading up to the shooting, Chief Williams's initial description of the shooting, the version of the shooting propounded by the police union, the amount of time it took for Defendants to confirm Decedent's

death, and statements that some public officials made in the wake of the shooting. Even the articles where Defendants highlight so-called "inflammatory" statements attributed to Plaintiffs' counsel, also include Defendants' public statements regarding the justification of the shooting which reveals these articles' impartial and non-prejudicial nature. (See e.g., Document 7-1, Exhibits to Nisenbaum Decl. 2, 3, 4, 5.)

Defendants' argument that this case has been politicized rendering all potential jurors impartial is untenable. In *Harris v. Pulley*, the defendant was tried for bank robbery, kidnapping, and murder, and a public dispute between federal and state prosecutors over which office would be first to prosecute him resulted. During this dispute, the district attorney attempted to delay Harris's arraignment in federal court and members of the office accused the United State Attorney of "political grandstanding" to which the US Attorney responded that it was the county prosecutors who were "grandstanding." *Harris*, 885 F.2d at 1362-63 (internal citation omitted). Even with all of this fighting amongst public officials having been played out in the media, the *Harris* Court determined that the record did not support Harris's contention that the atmosphere surrounding the trial was so inflammatory as to undermine his right to a fair trial. *Harris*, 885 F.2d at 1362 (finding the vast majority of media accounts to be factual in nature, even though they refer to defendant's criminal history and his confession, because they were published within weeks immediately following the crimes and the media coverage dissipated considerably in the months following.) Similarly here, the articles that Defendants term as "politicized" in which public officials make public statements about aspects of this case (e.g., the letter from the Interim City Attorney to the District Attorney denying recusal and the California Department of Justice press release that it is investigating allegations of destruction of evidence) are factual in nature and do not undermine Defendants' right to an impartial jury. See *Gotbaum v. City of Phoenix*, 617 F.Supp.2d 878, 882 (finding County Attorney's public announcement that "his office found no criminal wrongdoing on the part of the police officers involved" in an incident giving rise to a Section 1983 lawsuit to be factual in nature and not evidence of inflammatory publicity).

Defendants' argument that protests in honor of the Black Lives Matter movement and commemorating George Floyd's death have inflamed the community and warrants a change of venue is unsustainable. Similar protests occurred in Fresno. (See e.g., https://www.fresnobee.com/sports/article243340801.html and https://www.kqed.org/news/11824197/a-cycle-that-needs-to-be-broken-a-fresno-activist-speaks-out.) Members of the Fresno community may very well exercise their constitutional right to protest if this case is transferred to the Fresno Division. Where will Defendants seek solace in that instance?

Defendants argue that a change of venue is required because the media depicts Chief Williams's public statements as admissions. The Ninth Circuit has found that material not admissible at trial is a factor in determining whether prejudice may be presumed from pretrial publicity. *Daniels*, 428 F.3d at 1211. Again, the media coverage identified by Defendants is factual in nature. That is, Chief Williams's varying descriptions of the shooting of Sean Monterrosa are public statements that he uttered at his own press conferences. The fact that Chief Williams made these statements is admissible at trial. Similarly, that Defendant City repaired the police vehicle windshield and placed the car back in service is a fact admissible at trial. Any media coverage of these admissible facts does not support a finding of presumed prejudice.

Regarding all of the evidence identified by Defendants, even if this Court finds the media coverage identified by Defendants to be unfavorable, "unfavorable publicity, 'in itself, is insufficient to compel a finding that the defendants were denied an impartial jury.'" *Coliseum II*, 726 F.2d at 1400. (internal citation omitted).

### c. Statements of Plaintiffs' Counsel do not Support a Presumption of Prejudice Warranting Change of Venue

Defendants argue that the statements and social media posts of Plaintiff's counsel have inflamed the community. Again, most articles that quote Plaintiffs' counsel and Plaintiffs' view of the shooting, also include Defendants' public statements meant to justify the Defendants' actions and vilify Decedent Monterrosa by representing that he was attacking the officers. As such, these articles are decidedly impartial. See *Martinez v. City of Fresno*, 2009 WL 2151907, at *5 (E.D. Cal. 2009)

(finding media coverage that report Plaintiff's attorney's views on evidence bearing on Defendants' credibility "did not constitute the kind of pervasive media coverage that requires a change in venue…nor demonstrate a 'huge…wave of public passion' that would warrant a finding of likely prejudice."). Defendants are also being exceedingly duplicitous by attributing nefarious intent to Plaintiffs' press conference which announced the instant lawsuit, when Defendants multiple press conferences and varying press releases were clearly intended to besmirch Sean Monterrosa and influence public opinion that the Defendants' actions were justified.

      Moreover, courts have discounted an individual's blog and/or social media posts as sufficient evidence of prejudicial pretrial publicity because there is no "reason to believe that the blog comments have been widely read." *Gotbaum v. City of Phoenix*, 617 F. Supp.2d 878, 882 (D. Ariz. 2008). And Defendants "provide no reason to conclude that the comments of these bloggers represent the views of the jury pool at large." *Id*. Indeed, the varied views of City of Vallejo residents are captured in Defendants Exhibit 6 (Document 7-1) which purports to reveal Defendant Tonn as the shooter but also includes comments from community members that call for not rushing to judgment even in the face of Defendants previous officer-involved shootings and questioning the source of the information. These comments reveal that members of the community that have been exposed to the pretrial publicity that Defendants claim is prejudicial have varying views on the issue and that an impartial jury can be seated even amongst these exposed community members. Regarding an individual's social media posts, courts have determined, "[t]he question…, is not whether the blog authors could serve as fair and impartial jurors, but whether an impartial jury can be selected from among the 1.6 million citizens…, who make up the Court's jury pool." *Gotbaum*, 617 F.Supp.2d at 881-82 (2008).

      ***d. Defendants' Assertion that this Court will be Unable to Seat Impartial Jurors is Pure Speculation***

      Defendants have effectively compiled a collection of media articles and broadcasts in which mostly local media outlets have reported the facts of this case, which occurred during a time of a national reckoning with issues of police interaction with communities of color. This media coverage

is largely impartial reporting both Plaintiffs' view of the shooting and Defendants' justification for the shooting. Defendants fail to show anything beyond mere speculation that this publicity will implicate the fairness of trial which will occur sometime far in the future, when public interest in these issues will continue to dissipate much like it already has. See e.g., *Harris*, 885 F.2d at 1362 (finding dissipating media coverage to cut against a presumption of prejudice).

Defendants' claim that voir dire will not enable the Court to exclude biased jurors in also baseless. Courts have found that a change of venue is an unnecessary drastic measure when traditional devices used for combating prejudices (such as, using extensive questionnaires during jury selection, increasing the size of the jury pool, and excusing for cause juror who have been exposed to unfavorable media coverage) and courtroom-control measures (such as, admonishing the jurors from reading or watching news reports) can adequately "defuse prejudicial pre-trial publicity." See e.g., *Oliver v. City & Cty. of San Francisco*, 2009 WL 10736493, at *1–3 (citing *Sheppard v. Maxwell*, 384 U.S. 333, 357-58 (1966)). Moreover, carefully crafted voir dire questions can root out the people that Defendants fear are willing to lie under oath in a federal court in order to be placed on the jury "for a chance to render a verdict." See *Gotbaum*, 617 F. Supp.2d at 882.

Even if a few members of the potential jury venire may have been exposed to the media coverage identified by Defendants, it does not require a change of venue.

> It is not required ... that [ ] jurors be totally ignorant of the facts and issues
> involved. In these days of swift, widespread and diverse methods of
> communication ... scarcely any of those best qualified to serve as jurors will not
> have formed some impression or opinion as to the merits of the case. This is
> particularly true in criminal cases. To hold that the mere existence of any
> preconceived notion as to the guilt or innocence of an accused, without more, is
> sufficient to rebut the presumption of a prospective juror's impartiality would be
> to establish an impossible standard.

See *Crater v. Galaza*, 491 F.3d 1119, 1133 (9th Cir. 2007) (quoting *Irvin*, 366 U.S. at 722–23).

Defendants have provided no evidence to demonstrate prejudice that warrants a change of venue or transfer to another division within this district.

**CONCLUSION**

Defendants have not produced any evidence demonstrating that the entire district is overly saturated with media attention to the point that an impartial jury cannot be seated and a fair trial cannot be attained. The Defendants have failed to meet their burden in establishing why venue should be changed. Thus, the Court should deny the Defendants' Motion for Intra-District Transfer of Venue.

Dated:  November 19, 2020                    LAW OFFICE OF JOHN L. BURRIS


                                             /s/ *Benjamin Nisenbaum*
                                             Benjamin Nisenbaum
                                             Attorney for Plaintiffs