**JOHN L. BURRIS ESQ., SBN 069888**
**BENJAMIN NISENBAUM, ESQ., SBN 222173**
**JAMES COOK, ESQ., SBN 300212**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120f
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
John.Burris@johnburrislaw.com
Ben.Nisenbaum@johnburrislaw.com
James.Cook@johnburrislaw.com

Attorneys for Plaintiffs
Neftali Monterrosa, et al.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEFTALI MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; NORA MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; MICHELLE MONTERROSA, individually; ASHLEY MONTERROSA, individually,<br><br>Plaintiffs,<br>v.<br><br>CITY OF VALLEJO, a municipal corporation; JARRETT TONN, individually, and Vallejo police officers DOES 1-25, inclusive,<br><br>Defendants. | CASE NO.: 2:20-cv-01563-TLN-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE COMPLAINT**<br><br>Date:   December 3, 2020<br>Time:  2:00 P.M.<br>Place:  Courtroom 2<br>Judge: Hon. Troy L. Nunley |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ iii

Introduction and Statement of Facts ........................................................................................ 1

Legal Analysis .......................................................................................................................... 4

I. Legal Standard for Motion to Dismiss ................................................................................. 4

II. Plaintiffs Stated Sufficient Facts Plausibly Demonstrating Entitlement to Relief ............. 5

A. Plaintiffs Stated Sufficient Facts to Support Ashley and Michelle Monterrosa's Right to Familial Relationship ............................................................................................................... 5

B. Decedent's Siblings Ashley and Michelle Monterrosa Stated Sufficient Facts to Show a Violation of Their First Amendment Rights ............................................................................ 8

C. Defendant Tonn is not Entitled to Qualified Immunity ...................................................... 10

D. The Court Should Not Strike Paragraph 4 of the Prayer for Relief as it Seeks Relief for Statutory Violations Under the Bane Act ............................................................................... 12

Conclusion ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013)......................................................11

*Anderson v. Creighton*, 483 U.S. 635 (1987)........................................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................................4, 5

*Austin B. v. Escondido Sch. Dist.*, 149 Cal.4th 860, 883 (2007) ..........................................................12

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987) ...............................6, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................................4, 5

*Bracken v. Okura*, 869 F.3d 771 (9th Cir. 2017)...................................................................................10

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996).................................................................. 4

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................................... 4

*Dist. of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ..............................................................................10

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ................................................ 5

*Erotic Service Provider Legal Educ. and Research Project v. Gascon*, 880 F.3d 450 (9th Cir. 2018). 6

*Foman v. Davis*, 371 U.S. 178 (1962)..................................................................................................... 5

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)..........................................................................................10

*Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007) ..................................................................................11

*IDK, Inc. v. Clark Cnty*, 836 F.3d 1185 (9th Cir. 1988) ........................................................................ 6

*Intri–Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048 (9th Cir. 2007) .................................................. 5

*Johnson v. Riverside Healthcare*, 572 F.3d 962 (9th Cir. 2009) ........................................................... 5

*Kaur v. City of Lodi*, 263 F. Supp. 3d 947 (E.D. Cal. 2017).................................................................11

*Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004)...........................................................11

*Mann v. City of Sacramento*, 748 Fed. Appx. 112 (9th Cir. 2018).............................................6, 8, 11

*Martinez v. City of Clovis*, 943 F.3d 1260 (9th Cir. 2019)....................................................................10

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984)....................................................................................... 6

*Sanders v. Brown*, 504 F.3d 903 (9th Cir. 2007).................................................................................... 5

*Saucier v. Katz*, 533 U.S. 194 (2001)....................................................................................................10

Plaintiff's Oppositon to Defendant's Motion to Dismiss and Strike Complaint
*Neftali Monterrosa, et al. v City of Vallejo et al.* Case No. 2:20-cv-01563-TLN-DB
iii

*Stamps v Superior Court*, 136 Cal.App.4th 1441 (2006) ................................................................. 12

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................................................... 5

*Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075 (9th Cir. 2009) ......................................... 10

*Trujillo v. Board of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985) ..................................... 7, 11

*Turner v. City and County of San Francisco*, 788 F.3d 1206 (9th Cir. 2015) ................................... 4

*Zinermon v. Burch*, 494 U.S. 113 (1990) ......................................................................................... 6

**Statutes**

California Civil Code section 52.1 .................................................................................................. 12

Federal Rule of Civil Procedure, rule 15 (a) ................................................................................... 13

Federal Rules of Civil Procedure, Rule 12(b)(6) .............................................................................. 4

Federal Rules of Civil Procedure, Rule 8(a)(2) .......................................................................... 4, 10

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1216 (3d ed.2004) ..... 4

**Constitutional Provisions**

U.S. Const. amend. XIV ................................................................................................................... 5

## INTRODUCTION AND STATEMENT OF FACTS

On June 2, 2020, at about 12:37 a.m., Defendant Jarrett Tonn, a Vallejo Police Officer, killed 22-year-old Decedent Sean Monterrosa in his fourth Officer-Involved Shooting in 5 years. Mr. Monterrosa was unarmed, on his knees, and Defendant Tonn was holding his AR-15 semi-automatic rifle at the ready while in the backseat of an unmarked Vallejo Police Department vehicle. Mr. Monterrosa was suspected of possibly looting, (a property crime), but when shot and killed, he had nothing in his hands. No warnings were given that lethal force, or any force, would be used. The unmarked police vehicle was still moving forward when Defendant Tonn started shooting Mr. Monterrosa, and it stopped around the time Defendant Tonn fired his fifth and last shot. All shots were fired through the front windshield of the unmarked vehicle, and those shots struck and killed Mr. Monterrosa. Plaintiffs allege Mr. Monterrosa endured conscious pain and suffering from the shooting before he died.

The shooting happened in front of a Walgreen's store on the 1000 block of Redwood Street in Vallejo, and police responded to a report of possible looting. Defendant Tonn carried his AR-15 rifle. Defendant Tonn did not see Mr. Monterrosa come out from inside the Walgreen's, and according to Shawny Williams, the Chief of Police for the City of Vallejo, only a hammer was recovered from Mr. Monterrosa. The hammer was recovered from Mr. Monterrosa's sweatshirt pocket. He had not pulled it out of his sweatshirt pocket during his encounter with the police. Chief Williams initially described the shooting as happening when Mr. Monterrosa was on his knees, with his hands at waist level— meaning nothing was in his hands. However, Chief Williams changed his initial media representations of the shooting, apparently at the prompting of the police union for Vallejo Police officers, which had given its own media statement contradicting Chief Williams' initial account. Chief Williams then revised his public statement to align with the police union's claims— that Mr. Monterrosa was in a crouched position as if he were attacking the unmarked patrol vehicle from which Defendant Tonn fired his AR-15. Defendant City has not explained the basis for the change in

Chief William's position, and it is unclear how the police union would be in greater privity than Chief Williams to the evidence collected in the course of the Officer-Involved Shooting investigation.

Defendant Tonn and the officer who drove the unmarked police vehicle activated their body cams after the shooting, capturing events inside the police vehicle without audio 30 seconds prior to the shooting. According to Defendant City, there is no video footage of Decedent actually being shot. The audio portion of the body cam recordings begin shortly after the shooting and the officers exit the patrol vehicle.  Defendant Tonn and the officer who drove the unmarked police vehicle exited said vehicle after the vehicle and Defendant Tonn's own shooting stopped. Defendant Tonn frantically asked: "What did he point at us?" The officer who drove the unmarked police vehicle responded: "I don't know man." A moment later, Defendant Tonn then announced, contrary to his own stated question, and likely for the benefit of his body-cam recorder, the following lie: "Hey, he pointed a gun at us!" Mr. Monterrosa had no gun, and a hammer was later found in his sweatshirt pocket.

Defendant Tonn, in a panic after this, his fourth officer-involved shooting in five years, talking to himself, said either, "I'm stupid," or "fucking stupid." The body cam continued recording, and Defendant Tonn explained, "he came around, came right at us." Concerned about himself, Defendant Tonn later, while still recording himself, said: "This is not what I fucking needed tonight." Further in the recording, Defendant Tonn offered another explanation to another officer at the scene: "I thought that fucking axe was a gun!" The other officer responded, "I thought he was armed too. I saw him going like this. I was on the radio." A Vallejo police captain who came to the scene told Defendant Tonn: "You're gonna be alright, man. You've been through this before."

Indeed, Defendant Tonn has been in at least three other Officer-Involved Shootings within the past five years. The shootings include: a) In 2015, Defendant Tonn fired his gun 18 times in two seconds while trying to arrest Gerald Brown, who was allegedly in a stolen vehicle ramming Defendant Tonn's police vehicle. Mr. Brown survived; b) In May 2017, Defendant Tonn and former Vallejo Police Department officer Sean Kenney shot Kevin DeCarlo while trying to serve an arrest

warrant. Mr. DeCarlo survived; and c) Six weeks later, in July 2017, Defendant Tonn pursued a suspected carjacker, Victor Hurtado, and fired three gunshots at him. Mr. Hurtado survived.

In addition, Defendant Tonn was sued by Robert Strong in 2018 for using excessive force against Strong in an apparent retaliation for Mr. Strong filming a minor traffic stop. Defendant Tonn allegedly put Mr. Strong in a chokehold and scraped his forehead against the ground.

Plaintiffs allege on information and belief that Defendant Tonn was never disciplined and never subject to re-training or remediation following the three earlier shootings and the alleged use of excessive force against Mr. Strong, even though Defendant City was on notice that Defendant Tonn accounted for nearly 10% of the 32 people shot by Defendant City of Vallejo police officers since 2010 and repeatedly demonstrated a propensity to use excessive force in his capacity as a police officer. Furthermore, Defendant City hired Defendant Tonn after he left the City of Galt Police Department in 2014, following the killing of his cousin, a fellow City of Galt police officer, in the line of duty. Defendant Tonn reportedly was one of the first Galt police officers at the scene of his cousin's killing. Defendant Tonn, who graduated Modesto Junior College Police Academy in 2003 and was hired by the Galt Police Department in 2007, had no reported shootings as a Galt police officer. His shootings did not begin until after he was hired by Defendant City of Vallejo.

Furthermore, Defendant City interfered in the OIS investigation and the anticipated civil litigation by intentionally destroying relevant evidence after Plaintiffs demanded Defendant City preserve the evidence: the windshield of the patrol vehicle that Defendant Tonn fired his AR-15 through 5 times, and returning the unmarked vehicle to active duty, all before providing counsel with the opportunity to examine the windshield or the unmarked vehicle. Plaintiffs were thereby deprived of the opportunity for a reconstruction expert of their own to examine said relevant physical evidence. In destroying said relevant physical evidence, Defendant City ratified and condoned Defendant Tonn's malicious, unreasonable, deliberate, and criminally-indifferent shooting and killing of Decedent Sean Monterrosa.

The shooting and killing of Decedent Sean Monterrosa described herein was brutal, malicious, and done without just provocation or cause, proximately caused Plaintiffs' injuries and resulting damages.

## LEGAL ANALYSIS

**I. Legal Standard For Motion To Dismiss**

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face." *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1216 (3d ed.2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Deciding whether a plaintiff has stated a plausible claim thus requires courts to "begin by taking note of the elements a plaintiff must plead to state a claim." *Ashcroft*, 556 U.S. at 675. Courts then disregard "formulaic recitations" of a claim's elements and "labels and conclusions." *Id.* at

681; see also *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007) ("Conclusory allegations…are insufficient to defeat a motion to dismiss.")

After disregarding conclusory allegations, courts must assess whether the nonconclusory factual allegations remaining include "sufficient facts to state the elements of a claim." *Johnson v. Riverside Healthcare*, 572 F.3d 962, 970 (9th Cir. 2009). A complaint contains "sufficient facts" to avoid dismissal only when the nonconclusory facts alleged give "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Factual allegations taken as true also must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216; *Iqbal*, 556 U.S. at 679 (Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." *Foman v. Davis*, 371 U.S. 178, 182 (1962); see *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri–Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

**II. Plaintiffs Stated Sufficient Facts Plausibly Demonstrating Entitlement to Relief**

    **A.**    **Plaintiffs stated sufficient facts to support Ashley and Michelle Monterrosa's Right to Familial Relationship**

Under the Due Process Clause of the Fourteenth Amendment, a person has the right to be free from governmental interference with their familial relationships. (U.S. Const. amend. XIV, §1) The Fourteenth Amendment Due Process Clause applies to state and local governments and provides,

"No state shall…deprive any person of life, liberty, or property, without due process of law." (U.S. Const. amend. XIV, §1). The Fourteenth Amendment Due Process Clause is the means by which Congress has incorporated most of the Bill of Rights and made them applicable to the states. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "There are two distinct forms of freedom of association: (1) freedom of intimate association, protected under the Substantive Due Process Clause of the Fourteenth Amendment; and (2) freedom of expressive association, protected under the Freedom of Speech Clause of the First Amendment." *Erotic Service Provider Legal Educ. and Research Project v. Gascon*, 880 F.3d 450, 458 (9th Cir. 2018), as amended, 881 F.3d 792 (9th Cir. 2018), and the Ninth Circuit has held that "claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." *Mann v. City of Sacramento*, 748 Fed. Appx. 112, 114 (9th Cir. 2018). The analysis of the contours of familial relationship that will permit recovery under Ninth Circuit precedent involves evaluating the "objective characteristics of the relationship" to determine whether the relationship is "sufficiently personal or private to warrant constitutional protection." *Id*. at 115 (internal quotations omitted) (citing *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545-46 (1987)).

"The relationships protected by the fourteenth amendment are those that attend the creation and sustenance of a family and similar 'highly personal relationships.'" *IDK, Inc. v. Clark Cnty*, 836 F.3d 1185, 1193 (9th Cir. 1988) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618-19 (1984)). Relationships between cohabitating siblings fit this description. Indeed, the Ninth Circuit recently reaffirmed that adult, non-cohabitating siblings do not enjoy a right to intimate association. *Mann*, 748 Fed.Appx at 115. Here, Michelle and Ashley Monterrosa, as cohabitating siblings are entitled to due process for their intimate association with their brother Sean Monterrosa, and Defendant Tonn by recklessly shooting and killing Sean violated these Plaintiffs constitutional rights.

The Plaintiffs state in the Complaint that the Decedent and his siblings lived together for the entirety of their lives and enjoyed a highly personal relationship. Compl. ¶ 5. Michelle and Ashley Monterrosa, enjoyed a highly personal relationship with their brother, Decedent Sean Monterrosa. This highly personal relationship was abruptly ended by the unconstitutional and reckless acts of

Defendant Officer Tonn, when he intentionally, and without warning, shot and killed Monterrosa. Compl. ¶ 11.

Moreover, the Plaintiffs argue that the right to familial relationship does not only translate to companionship, but also to highly personal relationships such as between cohabiting siblings. As cohabiting siblings, Plaintiffs Michelle and Ashley Monterrosa sufficiently established a personal relationship which warrants constitutional protection. "Plaintiff Michelle Monterrosa is 24 years old, and she is the older sister of Decedent Sean Monterrosa who was 22 years old when he was killed. Decedent Sean Monterrosa had lived in the same household with his parents and his two sisters, Plaintiff Michelle Monterrosa and Ashley Monterrosa, his entire life. Plaintiffs Michelle Monterrosa and Ashley Monterrosa, along with their parents, Plaintiffs Neftali Monterrosa and Nora Monterrosa, interacted with Decedent Sean Monterrosa on a daily basis, and supported each other in an emotional and familial way on a daily basis. All Plaintiffs herein were a very tightly knit family." Compl. ¶ 5-6.

Defendant officer Tonn had no reason to believe that the unarmed Decedent was a danger to the public at any point during the incident. When Mr. Monterrosa knelt and raised his hands, signaling his immediate surrender, Officer Tonn decided to shoot and kill him with his semi-automatic AR-15. No warnings were given that lethal force, or any force, would be used against the unarmed Monterrosa. The unmarked police vehicle was still moving forward when Defendant Tonn started shooting Mr. Monterrosa. Compl. ¶ 11. Plaintiffs believe that Officer Tonn intended to kill Monterrosa. This intent deprived the Plaintiffs of any constitutionally protected relationship with decedent. Officer Tonn killed Monterrosa by shooting five rounds of his AR-15 semi-automatic rifle through the front shield of the unmarked Vallejo Police Department vehicle. Compl. ¶ 11.

Defendants assert that Plaintiffs failed to show Officer Tonn intended to violate Ashley and Michelle Monterrosa's rights. As Defendants stated, The alleged conduct "will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right." *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985).

Here, Tonn did not merely intend to stop Monterrosa. He was already stopped. Monterrosa posed no threat. Instead, Tonn intended to kill Monterrosa and stop him from ever returning home.

Tonn intended to end Monterrosa's life. Tonn intended to prevent Monterrosa from living and participating in any and all familial relationships in his life, including that of his sisters, Ashley and Michelle Monterrosa. If he just intended to stop Monterrosa, he would have detained him without killing him. Tellingly, Defendant's motion to dismiss does not assert that Tonn did not intend to kill Monterrosa. Defendants also don't assert that Tonn used reasonable force to detain Monterrosa.

Thus, Tonn intended to kill Monterrosa to ever prevent him from returning to his life, his home, and his family, thereby depriving Michelle and Ashley Monterrosa of their right to familial relationship with their brother, Sean Monterrosa.

### B. Decedents' siblings, Ashley and Michelle Monterrosa, stated sufficient facts to show a violation of their First Amendment rights

The Supreme Court stated as follows: "The intimate relationships to which we have accorded constitutional protection include marriage; the begetting and bearing of children; child rearing and education; and cohabitation with relatives. Of course, we have not held that constitutional protection is restricted to relationships among family members. We have emphasized that the First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.' But in *Roberts* we observed that '[d]etermining the limits of state authority over an individual's freedom to enter into a particular association…unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments.' In determining whether a particular association is sufficiently personal or private to warrant constitutional protection, we consider factors such as size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Rotary Club*, 481 U.S. at 545–46, 107 S.Ct. 1940. Here again, the Ninth Circuit has held that "claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." *Mann v. City of Sacramento*, 748 Fed. Appx. at 114.

Here, Plaintiffs argue that of the United States Constitution First Amendment Rights

of Association with Decedent Sean Monterrosa apply for the following reasons:

The Plaintiffs, Michelle and Ashley Monterrosa, enjoyed a life-long, deep and personal bond with their brother Sean Monterrosa. As cohabiting siblings, they sufficiently established a personal relationship which warrants constitutional protection, as guaranteed in the First Amendment of the United States Constitution: "Plaintiff Michelle Monterrosa is 24 years old, and she is the older sister of Decedent Sean Monterrosa who was 22 years old when he was killed. Decedent Sean Monterrosa had lived in the same household with his parents and his two sisters, Plaintiff Michelle Monterrosa and Ashley Monterrosa, his entire life. Plaintiffs Michelle Monterrosa and Ashley Monterrosa, along with their parents, Plaintiffs Neftali Monterrosa and Nora Monterrosa, interacted with Decedent Sean Monterrosa on a daily basis, and supported each other in an emotional and familial way on a daily basis. All Plaintiffs herein were a very tightly knit family." Compl. ¶ 5-6.

Furthermore, the Plaintiffs contend that the Defendants directly and intentionally interfered with the siblings' right to a protected relationship. Officer Tonn intended to shoot and kill Monterrosa when he fired his semi-automatic assault rifle through the windshield of the moving vehicle. No warning was given to the unarmed Decedent. Compl. ¶ 11. "The unmarked police vehicle was still moving forward when Defendant Tonn started shooting Mr. Monterrosa, and it stopped around the time Defendant Tonn fired his fifth and last shot. All shots were fired through the front windshield of the unmarked vehicle, and those shots struck and killed Mr. Monterrosa." Compl. ¶ 11.

Moreover, the Plaintiffs Michelle and Ashley Monterrosa allege that Defendant officer Tonn impermissibly interfered with their right to maintain a relationship with their brother Sean Monterrosa against undue intrusion. Undue intrusion occurred when Defendant officer Tonn used excessive force to shoot and kill Monterrosa without warning Compl. ¶ 11-25.

Further, Plaintiffs provided fair notice about what the claim is and the grounds upon which it rests. Compl. ¶ 1-44.

Thus, the Defendants are liable for violations of Plaintiffs Michelle and Ashley Monterrosa's United States Constitution First Amendment Rights of Association with Decedent.

### C. Defendant Tonn is not Entitled to Qualified Immunity

In the alternative, Defendants argue that Plaintiffs' third and fourth causes of action fail because they are entitled to qualified immunity. Officers and officials are not entitled to immunity under § 1983 when (1) they violated a constitutional right, and (2) that right was clearly established at the time of the violation. *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). An invocation of qualified immunity is defeated if an officer or official knew or should have known that his actions, taken within the sphere of official responsibility, would violate the constitutional rights of the plaintiff. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

Qualified immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibility and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019). Qualified immunity serves the function of protecting government officers "in the performance of their public, governmental functions." *Bracken v. Okura*, 869 F.3d 771, 774 (9th Cir. 2017). "It does so not to benefit the agents of government, but to safeguard government itself, and thereby protect the public at large." *Id*. (internal quotations and citation omitted). Even so, this does not mean that courts may usurp the jury's province to resolve factual disputes. See *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009) (stating that whether a constitutional violation occurred constitutes a question of fact, while the examination of whether a right was clearly established is a question of law).

Indeed, the Ninth Circuit has recognized:

> "the special difficulty of deciding the motion to dismiss a Defendant on qualified immunity grounds at this stage. Under the notice pleading standard of the Federal Rules, plaintiffs are only required to give a "short and plain statement" of their claims. Fed.R.Civ.P. 8(a)(2). Thus, when reviewing the sufficiency of a complaint before receiving any evidence, our task is a limited one. "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (Internal citation omitted.) [¶] As we recognized in *Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004), a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record." *Id.* at 957. While "government officials have the right ... to raise ... qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case." *Id*.

*Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007).

Here, Defendant Tonn clearly violated the Plaintiff's constitutional rights. Officer Tonn knew or should have known unreasonably killing Monterrosa would deprive Ashley and Michelle Monterrosa their right to a relationship with their brother. Defendants assert Tonn is entitled to qualified immunity because Plaintiffs' rights were not clearly established at the time Tonn killed Monterrosa. See *A.D. v. California Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013) (denying qualified immunity for on Plaintiff's due process claims because shooting a person twelve times where the officer who fired the shots ascertained the decedent was unarmed presented such an "obvious" case of a due process violation); *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017) (finding the Officer Defendants had an illegitimate purpose if that jury concludes the Officer Defendants shot a non-dangerous, non-fleeing, possibly mentally ill, suspected misdemeanant numerous times after that person may have said "don't shoot" thereby denying qualified immunity on Plaintiffs' due process claims). Plaintiffs have already established that Michelle and Ashley Monterrosa, as cohabiting siblings that enjoyed a life-long, deep and personal bond with their brother Sean Monterrosa, have a personal relationship with Decedent which warrants constitutional protection, as guaranteed in the First and Fourteenth Amendments. *Mann*, 748 Fed. Appx. at 114.

Further, as *Trujillo* states: "[a]lthough the parental relationship may warrant the greatest degree of protection and require the state to demonstrate a more compelling interest to justify an intrusion on that relationship, we cannot agree that other intimate relationships are unprotected and consequently excluded from the remedy established by section 1983." And again, as Defendants stated, "the alleged conduct "will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right." *Trujillo v. Board of County Comm'rs*, 768

F.2d at 1190. Plaintiff's showed Officer Tonn's conduct was directed at the relationship between Sean Monterrosa, and Michelle and Ashley Monterrosa.

Here, Officer Tonn knew or should have known that his actions, taken within the sphere of official responsibility, would violate the constitutional rights of Ashley and Michelle Monterrosa. Officer Tonn's actions were reckless, irresponsible and violated Plaintff's constitutional rights when he shot and killed the unarmed Monterrosa. Tonn had no right to shoot and kill Monterrosa after Monterrosa raised hands above his waist to signal surrender. Compl. ¶ 11-14. Tonn forever prevented Monterrosa from returning home, thereby violating Ashley and Michelle's right to association with him and their right to a familial relationship with him.

Thus, Ashely and Michelle Monterrosas' right to be free from violation of their right to a relationship with Sean Monterrosa was clearly established at the time Tonn killed Sean Monterrosa. Therefore, based on the analysis above, Defendant Tonn is not entitled to qualified immunity.

D. **The Court Should NOT Strike Paragraph 4 of the Prayer for Relief as it Seeks Relief for Statutory Violations under the Bane Act**

Civil Code section 52.1 is also known as the Bane Civil Rights Act. It applies when a "person … whether or not acting under color of law, interferes by threat, intimidation or coercion, or attempts [to do so] … with the exercise or enjoyment by any individual … of rights secured by the Constitution or laws of the United States." To allege a Bane Act claim, Plaintiffs must plead allegations demonstrating: (1) defendants interfered with or attempted to interfere with plaintiff's constitutional or statutory right: (2) the plaintiffs reasonably believed if they exercised their constitutional right defendants would commit violence against them, or the defendants injured plaintiffs to prevent them from exercising their constitutional rights; (3) the plaintiffs were harmed; and (4) the defendants' conduct was a substantial factor in causing the plaintiffs' harm. *Austin B. v. Escondido Sch. Dist.*, 149 Cal.4th 860, 883 (2007); *Stamps v Superior Court*, 136 Cal.App.4th 1441 (2006).

Here, Plaintiffs clearly demonstrated that Defendant officer Tonn interfered with Plaintiff's constitutional or statutory right by shooting the unarmed Monterrosa without warning after he had his

hands up in the air. Compl. ¶ 11. Plaintiffs were harmed by the reckless and unconstitutional actions of officer Tonn, as stated in the Introduction of the Complaint :"One shot went through Mr. Monterrosa's neck, with a bullet fragment exiting through the back of his head." Defendant Tonn's conduct was a substantial factor in causing Plaintiff's harm, as stated in the Complaint ¶ 11. Defendant Tonn used deadly force against the Decedent.

Therefore, based on the analysis above, the Defendants are liable for Bane Act violations.

## CONCLUSION

Based on the foregoing, Plaintiffs urge this Court to deny Defendants' Motion to Dismiss, as they adequately state a case for establishing an evidentiary basis for their claims.  In the alternative, Plaintiffs seek leave of the Court to amend the Complaint to include any inadvertently omitted references, to correct any inartful verbiage, and otherwise remedy any other pleading deficiencies this Court ascribes. Federal Rule of Civil Procedure, rule 15 (a) requires that leave to file an amended complaint be "freely given when justice so requires."  Here, this standard is met. Thus, at the very least, Plaintiff should be given leave to amend.

Dated:  November 19, 2020                    LAW OFFICE OF JOHN L. BURRIS


                      /s/ *Benjamin Nisenbaum*
               Benjamin Nisenbaum
               Attorney for Plaintiffs