**VERONICA A.F. NEBB**
City Attorney, SBN 140001
**BY:    KATELYN M. KNIGHT**
Assistant City Attorney, SBN 264573
**MEERA BHATT**
Assistant City Attorney, SBN 259203
**FARRAH HUSSEIN**
Deputy City Attorney, SBN 305726
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, 3rd Floor
Vallejo, CA  94590
Tel:    (707) 648-4545
Fax:    (707) 648-4687
Email: Katelyn.Knight@cityofvallejo.net
Meera.Bhatt@cityofvallejo.net
Farrah.Hussein@cityofvallejo.net

Attorneys for Defendants CITY OF VALLEJO and JARRETT TONN

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| NEFTALI MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; NORA MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; MICHELLE MONTERROSA, individually; ASHLEY MONTERROSA, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF VALLEJO, a municipal corporation; JARRETT TONN, individually, and, Vallejo police officers DOES 1-25, inclusive, <br><br> Defendants. | Case No:   **2:20-cv-01563-TLN-DB** <br><br> **OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS UNDER FRCP 11; DECLARATION OF KATELYN M. KNIGHT** <br><br> **Date:    January 7, 2021** <br> **Time:    2:00 p.m.** <br> **Crtrm: 2** |

*///*

# I.

# INTRODUCTION

This action arises from an officer-involved shooting that has become the focus of a relentless PR campaign by Plaintiffs' counsel which, whether they intend it or not, will all but ensure that Defendants do not receive a fair trial.  Since this incident took place on June 2, 2020, the Burris Firm has engaged in extensive press conferences, interviews, social media postings, and commentary of an inflammatory and unfairly prejudicial nature.  Among other things, Plaintiffs' counsel has repeatedly referred to the shooting as a murder, insinuated or outright stated that individuals associated with the City are lying or have tampered with the criminal investigation, communicated with the District Attorney to attempt to influence her criminal review of the matter and decision to charge or exonerate the officer, and repeatedly made inflammatory comments to prejudice the public against Officer Tonn, Chief Williams, and the Vallejo Police Department as a whole.

To mitigate some of this prejudice, Defendants filed a motion for protective order to enjoin Plaintiffs' counsel from unfairly commenting on the case, character and credibility of the parties or witnesses, and evidence, as well as a motion to transfer venue.  Plaintiffs filed the instant motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, asserting that the motions violate Rule 11 because they only discuss statements made by Plaintiffs' counsel and fail to include those made by the City.

The instant motion should be denied and attorney's fees awarded to compensate Defendants for the costs of opposing it.  As an initial matter, Plaintiffs' motion must be denied because Plaintiffs failed to comply with the requirement that a motion under Rule 11 be served 21 days prior to filing.  Fed. R. Civ. P. 11(c)(2).  This mandatory provision cannot be satisfied by meet and confer efforts or other informal warnings.  *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998).  Even if Plaintiffs had complied with the procedural pre-requisites, however, this sanctions motion would still merit denial.  As discussed more fully below, the limited public statements by the City are not material to Defendants' motions.  Defendants have sought relief based on the overwhelming volume of inflammatory and unfairly prejudicial statements made by

OPPOSITION TO MOTION FOR
SANCTIONS UNDER FRCP 11

Plaintiffs' counsel pertaining to the evidence in this case and the character of parties and witnesses.  The fact that the City has provided some information to the public, which it is required to do as a public entity, does not impact Defendants' need for a protective order and change of venue.

Because both of Defendants' motions were brought for a proper purpose, have extensive evidentiary support, and seek relief that is warranted under existing law, they are fully compliant with Rule 11 and this motion must be denied.

## II.

## BACKGROUND

## A.    Factual Background

This case arises from an officer-involved shooting that took place on June 2, 2020.  Just after midnight, a police captain assisting with patrol saw a group of looters breaking into the Walgreens at 1050 Redwood Street in downtown Vallejo.  The Vallejo Police Department had received multiple 911 calls reporting criminal activity at that location and had already responded to two burglaries in progress.  The captain called for assistance and three detectives from the Vallejo Police Department's specialized crime reduction unit in an unmarked police vehicle responded.  Together, the team developed a plan to approach the parking lot from both sides to block in the looters' vehicles and take them into custody.

As the officers were pulling into the parking lot, the police captain saw one of the looters acting as a lookout with one hand to his mouth and his arm extended down holding what appeared to be a weapon—he broadcast over the radio that the suspects were "armed, possibly armed".  The officers in the unmarked SUV activated their red and blue police lights and as they entered the parking lot, looters immediately began piling into two vehicles to flee the scene.  At that moment, the officers in the SUV saw one of the suspects run from the Walgreens toward a black sedan waiting in the parking lot.  Instead of entering the vehicle, the suspect abruptly stopped and turned toward the officers in a crouching down half-kneeling position as if in preparation to shoot and moved his hands toward what appeared to be the butt of a handgun near his waist.  The officer seated in the rear of the SUV fired five shots at the suspect through the

windshield.  One of those shots hit the suspect, who was found to have the butt of a hammer protruding from the front pocket of his hooded sweatshirt, and who succumbed to the injury approximately an hour later.

**B.      The Underlying Pleadings Challenged by This Motion**

Immediately after the officer-involved shooting, Plaintiffs' counsel launched a campaign to influence the media and the community from which potential jurors would be drawn.  Among other things, Plaintiffs' counsel held a 45-minute press conference during which they used demonstrative aids to discuss the distance between the shooting officer and suspect, the evidence available and not available and its impact, and entry and exit wounds, and attempted to impeach witnesses with information about their background.  Plaintiffs' counsel has also repeatedly and incorrectly stated that the suspect, Sean Monterrosa, was on his knees with his hands up in surrender, despite the fact that they have not seen any of the evidence relevant to what Monterrosa was doing at the time of the incident.  Further, Plaintiffs' counsel has repeatedly referred to the shooting as a murder, insinuated that individuals associated with the City are lying or have tampered with the criminal investigation, communicated with the District Attorney to attempt to influence her to either charge the officer or recuse herself from the criminal review (which she did), and made other inflammatory comments to prejudice the public against Defendants.

On October 6, 2020, Defendants filed a motion for change of venue (Dkt 6), and a motion for protective order prohibiting Plaintiffs' counsel from making further public statements during the pendency of this action regarding (1) the character, credibility, or reputation of a party; (2) the identity of a witness or the expected testimony of a party or a witness; (3) the contents of any pretrial confession, admission, or statement given by a party or that person's refusal or failure to make a statement; (4) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence; (5) the strengths or weaknesses of the case of either party; (6) the character, credibility, or reputation of the Vallejo Police Department; and (7) any other information Plaintiffs' counsel knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed (Dkt 7).  Both motions are

extremely detailed and supported by a declaration with 33 evidentiary exhibits consisting of video footage, press releases, news articles quoting from statements made by Plaintiffs' counsel and interviews given by Plaintiffs' counsel, and social media postings, and totaling 166 pages in length.  Most of those 33 exhibits contain numerous statements by Plaintiffs' counsel cited by Defendants in support of their motions.  (Dkt 6-1 and 7-1.)

**C.    Counsel's Discussions**

On October 27, 2020, Plaintiffs' counsel Ben Nisenbaum sent an e-mail to defense counsel demanding that both motions be withdrawn.  Mr. Nisenbaum argued that the motions violate Rule 11 of the Federal Rules of Civil Procedure because they omit a press conference by Chief Williams and public disclosure of video footage of the incident.  Mr. Nisenbaum stated, "Defendants do not get to be the only party that speaks publicly", essentially what Plaintiffs argue in this motion.  (Knight Decl., Ex. A.)

Defense counsel Katelyn Knight responded on November 3, 2020, outlining the reasons for the City of Vallejo limited release of information and records—required under Government Code Section 6254(f)(4)(A)(ii)—and explaining why the small number of releases made by the City are not remotely comparable to the media campaign waged by Plaintiffs' counsel or material to Defendants' motions.  Ms. Knight also offered to stipulate to a protective order enjoining all counsel from making statements to the media.  (Knight Decl., Ex. A.)  Plaintiff's counsel did not respond to the offer.  (Knight Decl., ¶ 2.)

On November 19, 2020, Plaintiffs filed the instant motion for sanctions under Rule 11.  The motion was not served prior to filing.  (Knight Decl., ¶ 3.)

### III.

### ARGUMENT

**A.    Legal Standard**

Rule 11 of the Federal Rules of Civil Procedure provides that an attorney presenting any signed pleading to the Court certifies to the best of their knowledge, information, and belief, formed after a reasonable inquiry, that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of

1  litigation;

2  (2) the claims, defenses, and other legal contentions are warranted
   by existing law or by a nonfrivolous argument for extending,
3  modifying, or reversing existing law or for establishing new law;

4  (3) the factual contentions have evidentiary support or, if
   specifically so identified, will likely have evidentiary support after
5  a reasonable opportunity for further investigation or discovery; and

6  (4) the denials of factual contentions are warranted on the evidence
   or, if specifically so identified, are reasonably based on belief or a
7  lack of information.

8  Fed. R. Civ. P. 11(b).  If the Court finds a violation of Rule 11 has occurred, the Court may

9  impose an appropriate monetary or non-monetary sanction.  Fed. R. Civ. P. 11(c)(1).

10  The purpose of Rule 11 is to deter frivolous claims and curb abuses of the legal system.

11  *Binghamton Masonic Temple v. Bares*, 168 F.R.D. 121, 126 (N.D.N.Y. 1996); *Rhinehart v.*

12  *Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979).  Accordingly, the rule explicitly provides that any

13  sanctions imposed "must be limited to what suffices to deter repetition of the conduct or

14  comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).

15  **B.    Plaintiffs' Motion Must be Denied Because it was Not Served 21 Days Prior to Filing
       as Required by Rule 11**
16

17  As an initial matter, Plaintiffs' Motion must be denied because they have failed to

18  comply with the requirements of any motion brought under Rule 11.  "Rule 11(c)(1)(A) provides

19  strict procedural requirements for parties to follow when they move for sanctions under Rule

20  11." *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 788 (9th Cir. 2001).  To comply with the

21  Rule, the moving party must serve its Rule 11 motion on the opposing party with a demand for

22  retraction of the allegedly offending allegations, and then to allow the opposing party at least 21

23  days to retract the pleading before filing the motion with the court. *Id.* at 788-89.  Rule 11 states

24  this requirement clearly: "The motion must be served under Rule 5, but it must not be filed or be

25  presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn

26  or appropriately corrected within 21 days after service or within another time the court sets."

27  Fed. R. Civ. P. 11(c)(2).  As discussed in the advisory committee notes, this "safe harbor"

28  provision is intended to stress the seriousness of the motion, define the precise conduct claimed

to violate the rule, and allow the opposing party a full and fair opportunity to consider the

grounds and avoid sanctions by withdrawing its position, if appropriate.

It is well established that a meet and confer letter or other informal warning is not sufficient to satisfy the procedural requirements of Rule 11. In *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998), the Ninth Circuit reversed a Rule 11 sanctions award on the grounds that the motion was not served 21 days before filing as required. Despite finding that the underlying patent claim "was not 'warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law" and that the target of the motion was given repeated notice of the claim's deficiencies, including a meet and confer letter discussing the deficiencies and giving notice of intent to file a Rule 11 motion, the Court held that the procedural requirements of Rule 11 are mandatory. *Id.* at 710. The Court opined "[i]t would [ ] wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion." *Id.*

This holding was reaffirmed *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772 (9th Cir. 2001). In overturning an award of sanctions by the District Court, the Ninth Circuit stated:

> In *Barber*, we held that the procedural requirements of Rule 11(c)(1)(A) 's "safe harbor" are mandatory. Thus, in Barber, we concluded that, although a defendant had given informal warnings to the plaintiffs threatening to seek Rule 11 sanctions, these warnings did not satisfy the strict requirement that a motion be served on the opposing party twenty-one days prior to filing. It is the service of the motion that gives notice to a party and its attorneys that they must retract or risk sanctions. In light of our holding in *Barber*, the fact that the plaintiffs had advance warning that Rainbow objected to their conspiracy allegation did not cure Rainbow's failure to comply with the strict procedural requirement of Rule 11(c)(1)(A). The district court abused its discretion when it concluded otherwise.

*Id.* at 789(internal citations omitted). Other circuit courts to consider the issue have overwhelmingly rejected the argument that anything less than strict compliance can satisfy Rule 11's safe harbor provision. *See Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 768 (6th Cir. 2014)(holding that the procedural requirements of Rule 11 are mandatory and citing decisions by the Second, Third, Fourth, Fifth, Eighth, Ninth, and Tenth Circuit Courts holding the same).

1        In this case, Plaintiffs did not serve the instant motion on Defendants prior to filing it

2   with the Court.  Plaintiffs were presumably aware of the requirement that a Rule 11 motion be

3   served 21 days before filing, as this requirement is referenced in their moving papers (Mtn at

4   9:12-15), however they have not provided any argument or authority for setting the requirement

5   aside or even acknowledged their lack of compliance.  The requirements of Rule 11 cannot be

6   satisfied by a meet and confer letter.  *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998); *Radcliffe v.*

7   *Rainbow Constr. Co.*, 254 F.3d 772 (9th Cir. 2001).  Because Plaintiffs failed to comply with the

8   requirements of Rule 11, their motion must be denied.

9   **C.      The Challenged Pleadings Do Not Violate Rule 11**

10       Defendants' motion for protective order and motion to change venue comply with the

11  requirements of all pleadings submitted to the Court under Rule 11(b).  Rule 11(b)(1) prohibits

12  pleadings presented for an improper purpose.  The motions at issue were not submitted for an

13  improper purpose; both motions were submitted to mitigate the harm caused by Plaintiffs'

14  counsel's extensive statements, interviews, press conferences, and social media postings about

15  the case, evidence and character of the parties and witnesses.  Some examples of this include

16  baseless accusations that the City destroyed video footage of the incident and engaged in a

17  "cover up", that a lieutenant was trying to misdirect the investigation by deliberately destroying

18  the windshield, and statements characterizing Officer Tonn as "potentially homicidal", "trigger-

19  happy", and "scared to death by any little thing, shooting at anything that moved with a rifle",

20  and asserting "right now we don't know who the next person that he's going to shoot or kill is.

21  We don't know when that will happen, but the odds are very good there is going to be another

22  person, and probably more than one if it keeps it up."  (Dkt 7-1, Ex. 1 at 15:16-15:22, 29:03-

23  29:18 and 38:38-52, and Exs. 14-15, 17, 19, 21.)

24       Rule 11(b)(2) requires the legal claims and contentions in a pleading to be warranted

25  under existing law, or a non-frivolous argument for extending, modifying, or reversing existing

26  law.  The relief requested in both motions is warranted by existing law.  As discussed in

27  Defendants' moving papers, a motion for protective order enjoining speech related to a pending

28  case is appropriate where the speech presents a substantial likelihood of prejudicing the integrity

of the pending proceedings.  *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1032, 1074-75 (1991);

*Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 596 (9th Cir. 1985).  In the

*Levine* case, the Ninth Circuit found that a protective order enjoining speech was appropriate

where the involved attorneys made multiple comments speaking to the merits of the case and the

proceedings, such as:

- "I don't think the case should ever have been brought. The initial characterization by the government that this was a major espionage case with untold damage was an incorrect assessment."

- "We've got two dummies here, no question about that…But these people should have never been taken seriously as spies. It's unrealistic to talk about the Miller case in the same breath as other espionage cases that have come along in the last few years."

- "The dismissal of these charges means the government has now conceded that no documents were ever passed. It's also a concession that there's been no damage to national security"

*Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 592-93 (9th Cir. 1985).

The statements made by Plaintiffs' counsel in this case are greater in number and more

inflammatory and prejudicial in nature.  Thus, a protective order is warranted by existing law.

The motion to transfer venue is similarly warranted under existing law.  As discussed in

the moving papers, when pretrial publicity "jeopardizes [the right to a fair trial by an impartial

jury] the trial court should grant the defendant a change in venue."  *Foley v. Parker,* 488 F.3d

377 (6th Cir. 2007).  Prejudice is presumed when the publicity related to a case causes a wave of

public passion, or when the record shows the community is saturated with prejudicial and

inflammatory media.  *Patton v. Yount,* 467 U.S. 1025, 1031 (1984); *Harris v. Pulley,* 885 F.2d

1354, 1361 (9th Cir. 1989).  But even in cases where there is no presumption of prejudice, the

Court has broad discretion to make rulings mitigating the prejudice of pretrial publicity,

including granting a venue change.  *See Marshall v. United States,* 360 U.S. 310, 312 (1959).

The same prejudicial publicity supporting Defendants' motion for protective order also supports

its motion to change venue.

Rule 11(b)(3)-(4) requires factual contentions and denials in pleadings to have

evidentiary support.  Both the motion for protective order and motion to change venue have

extensive evidentiary support.  Defendants submitted a declaration supporting each motion with

33 exhibits consisting of video footage, press releases, news articles quoting from statements made by Plaintiffs' counsel and interviews given by Plaintiffs' counsel, and social media postings.  Most of those 33 exhibits contain multiple statements cited by Defendants in support of their motion.  (Dkt 6-1 and 7-1.)  The declaration totals 166 pages.  Because both of the challenged motions were made for a proper purpose, have evidentiary support, and request relief warranted by existing law, they are compliant with Rule 11 and Plaintiffs' motion should be denied.

Plaintiffs argue Defendants' motions for a protective order and change of venue are frivolous in that they omit the fact that the Chief of Police held two press conferences, the City of Vallejo issued a press release, and the City of Vallejo released video footage of the incident. The limited statements by the City were not discussed in Defendants' motions because they are not material to Defendants' motions.  Defendants have sought relief based on the overwhelming volume of inflammatory and unfairly prejudicial statements made by Plaintiffs' counsel pertaining to the evidence in this case and the character of parties and witnesses.  The fact that the City has provided some information to the public, which is it required to do as a public entity, does not impact Defendants' need for a protective order to enjoin Plaintiffs' counsel from unfairly prejudicing the jury pool.

Unlike Plaintiffs' counsel, as a government agency, the City owes the public transparency and accountability.  The City is subject to the requirements of the Public Records Act and Penal Code § 832.7.  Under Penal Code § 832.7, the City is legally required to release records related to officer-involved shootings.  Consistent with those obligations, the Chief of Police held a short conference shortly after the officer-involved shooting at issue (consisting of a brief overview of the incident followed by nine minutes of questions), and a second press conference on July 8, 2020 to answer questions regarding the release of video footage.  The video footage depicting the incident was required to be released within 45 days of the incident pursuant to Government Code § 6254(f)(4)(A)(ii).  The City released the video footage because it was legally required to do so as a government agency.

Further, the City's limited release of information related to the underlying incident is not

material to Defendants' motions because it drastically differs from the sweeping media campaign led by the Burris Firm.  The City has released basic information about what occurred consistent with its legal obligations, and has responded to questions from the public and media, while reiterating that the investigation into the matter is in its early stages and only limited information could be shared.  Plaintiffs' attorneys, by contrast, have spoken at length about the evidence and the background and character of the parties, given multiple press interviews, and held a 46-minute press conference whereby they effectively tried their case in the media to a prospective jury pool.  During this lengthy press conference, Plaintiffs' counsel held up demonstrative exhibits, explaining to the prospective jury pool what they believe the evidence at trial will prove.  Plaintiffs' counsel went even further, by baselessly accusing the City of destroying video footage and engaging in a "cover up", and making repeated inflammatory statements about the department and Officer Tonn.

Unlike Plaintiffs' counsel, Defendants have not attempted to influence the District Attorney to exonerate the involved officer, called Plaintiffs liars or otherwise attacked their character, used inflammatory terms to refer to Sean Monterrosa, or held press conferences with demonstrative exhibits explaining how the City will show that the officers' use of force was reasonable.  In fact, the Chief of Police expressly declined to comment on whether the use of force in this case reasonable.   (Nisebnaum Decl., Ex. 1 at 12:40-13:35.)   The City's communications and those of Plaintiffs' counsel are not comparable, and the City's statements are not material to Defendants' need for relief.

Finally, Plaintiffs' argument that the City has exercised its First Amendment rights while attempting to enjoin Plaintiffs' counsel from exercising theirs has no bearing on the issue of whether a protective order is needed to protect the parties' right to a fair trial.  If Plaintiffs believe they need a protective order limiting Defendants' speech, they have a remedy.  Defense counsel offered to stipulate to a protective order binding all parties, however Plaintiffs' counsel did not accept.  As previously stated, defense counsel would have no objection to the Court granting Defendants' request for a protective order, but making it a mutual order binding on all counsel and on all parties.

Plaintiffs also argue that Defendants omitted a June 5, 2020 request for preservation of evidence and that Defendants assert that counsel first made a preservation request on July 9, 2020, after the fact that the vehicle driven by the officers had been placed back in service had become public.  That is incorrect.  What Defendants stated was:

> On July 9, 2020, Plaintiff's counsel Melissa Nold reached out to defense counsel to specifically request that the vehicle being driven at the time of the incident be preserved as evidence, along with a drone that had been flying that evening and was collected as evidence. After consulting with the Department, it was determined that the vehicle had already been placed back into service. Defense counsel advised Plaintiff's counsel of that fact and confirmed that the drone would be preserved post-examination. (Knight Decl., ¶ 16.) Nold immediately reported to Otis Taylor of the San Francisco Chronicle that evidence of the shooting had been destroyed. (Knight Decl., Ex. 15.) Nold also gave an interview to NBC Bay Area, stating: "Now this evidence is gone forever. Once they put that truck back into service, we'll never know what condition it was in at the time that night." 3 (Knight Decl., Ex. 16.)

(Motion for Protective Order at 11:6-16.)  After Ms. Nold made a specific request for preservation of the vehicle, defense counsel reached out to the Vallejo Police Department.  An e-mail was sent to Ms. Nold advising that the vehicle was placed back in service on July 14, 2020 at 2:11 p.m..  (Knight Decl., Ex. B.)  Sixty-six minutes later, S.F. Chronicle writer Otis Taylor tweeted "NEWS: @savage_esquire tells me that the Vallejo City Attorney has confirmed that the Vallejo City Police Department allowed evidence in the fatal shooting of Sean Monterrosa to be destroyed."  (Dkt. 7-1, Ex. 15.)  Multiple press inquiries followed.  The fact that the vehicle had been placed back in service was not public before that time.  (Knight Decl., ¶ 5.)

Defendants do not dispute that Plaintiffs' counsel made a more general request for preservation of evidence in June, however it is not clear why this would be material to Defendants' arguments in the motion for protective order.  As soon as Plaintiffs' counsel was advised that the car was placed back in service, they told the media Defendants destroyed evidence—that was the point being made by Defendants.

**D.    Attorney's Fees Should be Awarded to Defendants**

Separate and apart from the authority to impose sanctions for violation, Rule 11(c)(2) grants the Court authority to award attorney's fees to the prevailing party in a Rule 11 motion. Fed. R. Civ. P. 11(c)(2)("If warranted, the court may award to the prevailing party the reasonable

1   expenses, including attorney's fees, incurred for the motion.")  The prevailing party may be

2   either the movant or opponent, in the event the motion is denied the Court may award fees to the

3   motion's target.  *See Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014).

4         Attorney's fees should be awarded to Defendants in this case as the prevailing parties to

5   compensate for the cost of opposing this motion.  Plaintiffs' Rule 11 motion is wholly without

6   merit for all of the reasons discussed herein.  Plaintiffs failed to serve the motion 21 days prior to

7   filing, a basic requirement of a motion brought under Rule 11 that renders the motion fatally

8   defective.  The motions for protective order and venue change meet the requirements of Rule

9   11(b) because they were not brought for an improper purpose, have ample evidentiary support,

10  and seek relief warranted by existing law.  Plaintiffs' argument that the challenged motions

11  violate Rule 11 because they omit media statements made by the City is flimsy and does not

12  support this motion.

13        Defendants incurred $2,725 in opposing the instant motion (10.9 hours at a reasonable

14  fee rate of $250 per hour).  (Knight Decl. ¶ 6.)  Accordingly, Defendants request that the Court

15  award $2,725 as prevailing party attorney's fees pursuant to Rule 11(c)(2).

16                                       **IV.**

17                                    **CONCLUSION**

18        For the reasons discussed herein, Defendants respectfully request that the Court deny

19  Plaintiffs' motion for sanctions and award prevailing party attorney's fees to Defendants in the

20  amount of $2,725.

21

22  DATED:  December 24, 2020                 Respectfully submitted,

23

24                                           _/s/ Katelyn M. Knight_____
                                             KATELYN M. KNIGHT
25                                           MEERA BHATT
                                             FARRAH HUSSEIN
26                                           Attorneys for Defendants
                                             CITY OF VALLEJO and JARRETT TONN
27

28

## DECLARATION OF KATELYN M. KNIGHT

I, Katelyn M. Knight, hereby declare and state:

1. I am an attorney-at-law licensed to practice in the State of California and I am an Assistant City Attorney in the Vallejo City Attorney's Office. I am one of the attorneys responsible for handling the defense of this matter on behalf of the Defendants. I have personal knowledge of the matters set forth in this Declaration, except where stated on information and belief, and could and would competently testify to them under oath if called as a witness.

2. Attached hereto as Exhibit A is a true and correct copy of e-mail correspondence between myself and Plaintiffs' counsel Ben Nisenbaum. In that e-mail exchange, I offered to stipulate to a protective order enjoining all counsel from making statements to the media as outlined in Defendants' motion. Plaintiff's counsel has not responded to the offer.

3. On November 19, 2020, Plaintiffs filed the instant motion for sanctions under Rule 11. The motion was not served on Defendants prior to its filing.

4. On July 9, 2020, Plaintiffs' counsel Melissa Nold sent an e-mail to defense counsel restating her demand for preservation of evidence to specifically include the truck from which shots were fired and the drone confiscated by the Police Department. I reached out to the members of the Vallejo Police Department and learned that the truck had been placed back in service. On July 14, 2020 at 2:11 p.m., I sent an e-mail to Ms. Nold advising that the truck was placed back in service. A true and correct copy of that e-mail exchange is attached hereto as Exhibit B. (Knight Decl., Ex. B.)

5. S.F. Chronicle writer Otis Taylor's twitter feed shows that he tweeted the following sixty-six minutes later: "NEWS: @savage_esquire tells me that the Vallejo City Attorney has confirmed that the Vallejo City Police Department allowed evidence in the fatal shooting of Sean Monterrosa to be destroyed." The City received multiple press inquiries after this point. The City had not received any press inquiries or made any public statements regarding the status of the truck and windshield prior to advising Ms. Nold of the status.

6. I spent 10.9 hours preparing Defendants' response to the instant motion for sanctions under Rule 11. I have eleven years of litigation experience focused on general liability

1   defense, including defense of public entities.  I have practiced throughout the Bay Area and am

2   familiar with the hourly rates charged by attorneys practicing general liability defense in the Bay

3   Area and appearing in the U.S. District Court for the Eastern District of California.  An hourly

4   rate of $250 is consistent with prevailing market rates charged in the area by attorneys with

5   similar experience for this type of work.

6          Executed on this 24th day of December, 2020, at Vallejo, California.

7          I declare under penalty of perjury under the laws of the State of California and the United

8   States that the foregoing is true and correct.

9                                                                        */s/ Katelyn M. Knigh*t
                                                                        Katelyn M. Knight
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

| | |
|---|---|
| **From:** | Katelyn Knight |
| **To:** | "bnisenbaum@gmail.com" |
| **Cc:** | "john.burris@johnburrislaw.com"; "burris@lmi.net"; Randy J. Risner; Meera Bhatt; Farrah Hussein; Rachel Carranza |
| **Subject:** | RE: Monterrosa Meet and Confer: Rule 11 issues |
| **Date:** | Tuesday, November 03, 2020 10:46:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

Mr. Nisenbaum:

Not only is the motion for protective order meritorious, it is clear that such an order is necessary in this case to protect Defendants' right to a fair trial.

The City of Vallejo's limited release of information related to the underlying incident is fundamentally different from the extensive media campaign led by your office, both in its aim and scope.  The City's release of information related to the underlying incident has been driven by its obligations under the Public Records Act and its duty of transparency as a public entity.  The press conference you reference on July 8, 2020 took place following the release of video footage depicting the incident, which was required to be released within 45 days of the incident pursuant to Government Code Section 6254(f)(4)(A)(ii).  The press conference was held for the purpose of answering questions about the video release (*see* https://vallejopd.net/common/pages/DisplayFile.aspx?itemId=16985922).

Video footage showing the destruction of the exterior Walgreens video camera days before the incident was released to demonstrate why there was no exterior footage from Walgreens cameras depicting the shooting.  The footage is clearly identified by date and the compilation video released by the City expressly stated that the security camera in question was destroyed in a previous looting incident (https://vimeo.com/436510158 at 3:52).  The City has never suggested that Monterrosa was involved in the prior looting incident.

The City has released basic information about what occurred and has responded to questions from the public and media, while reiterating that the investigation into the matter is in its early stages and only limited information could be shared.  These releases do not have any bearing on Defendants' need for a protective order.  By contrast, your office has spoken at length about the evidence and the background and character of the parties, given multiple press interviews, and even held a 46-minute press conference with demonstrative exhibits explaining what Plaintiffs would establish at trial.  Clearly, your office hopes to influence the outcome of this matter by creating extensive media coverage.  The limited statements made by the City and the extensive media campaign waged by the Plaintiffs are not comparable.

To the extent that you think there is an issue of fairness present, Defendants would be happy to stipulate to a protective order binding all counsel from making statements as outlined in our motion.  Please let me know if you would be amenable to such a stipulation.

Finally, you have suggested that the motions filed by defense counsel may have been motivated

either by an antipathy toward Plaintiffs' former counsel Melissa Nold or due to pressure from the Vallejo Police Officers' Association.  I find both suggestions offensive.  Defendants' motions are motivated entirely by our desire to protects Defendants' right to a fair trial.  We have had no discussions with the VPOA and have no idea what their views are respecting the motions.  Further, we have no antipathy toward Ms. Nold and have no concern about her feelings on this matter one way or the other.

Rule 11 provides that the signing attorney to any motion presented to the Court certifies that the motion is not being presented for an improper purpose, the legal contentions are warranted by existing law, and that the factual contentions and denials have evidentiary support.  For the reasons discussed above, and as is evident from Defendants' motion for protective order and supporting exhibits, the motion meets each of these requirements.

Sincerely,

**Katelyn M. Knight**
**Assistant City Attorney**
*City of Vallejo | City Attorney's Office*
*555 Santa Clara Street*
*Vallejo, CA 94590*
*707.648.4388 | [katelyn.knight@cityofvallejo.net](mailto:katelyn.knight@cityofvallejo.net)*



---

**From:** Ben Nisenbaum [mailto:bnisenbaum@gmail.com]
**Sent:** Tuesday, October 27, 2020 2:29 PM
**To:** Meera Bhatt <Meera.Bhatt@cityofvallejo.net>; Katelyn Knight <Katelyn.Knight@cityofvallejo.net>; Farrah Hussein <Farrah.Hussein@cityofvallejo.net>
**Cc:** John Burris <John.burris@johnburrislaw.com>; John Burris <burris@lmi.net>
**Subject:** Monterrosa Meet and Confer: Rule 11 issues

Counsel,

I'm reviewing your motion for a gag order. It is meritless and in my view violates Rule 11. In fact, On July 8, 2020, more than 1 month after your clients were notified Plaintiffs were represented by instant counsel, and certainly aware there would be litigation in this case, Chief Williams held a press conference (footage of which is still available on line), in which he asserted certain factual claims as "that's accurate, that's factual", including a claim that Mr. Monterrosa "was in a crouching, half kneeling position. His hands were towards his waistband when turned towards the officers. The officers perceived the butt of a gun and they shot. That's accurate, that's factual."

Of course, since Defendants also claim there is no direct video of Mr. Monterrosa at that time,

it is unclear how the Chief could know this information is accurate or factual.  Your clients also released video footage designed to improperly and knowingly falsely disparage Mr. Monterrosa in showing subjects, none of whom are identifiable as Mr. Monterrosa, apparently vandalizing a security camera. This did not occur during the shooting, and the pretext for showing this act of destruction apparently unrelated to Defendants' conduct and Mr. Monterrosa, was to explain that this surveillance camera was not working.  It was obviously inflammatory to show this video of the vandalism of the ATM and had no bearing on the subject-incident shooting.

It is clear that the press conference held by Chief Williams on July 8 was an effort to condition members of the public to Defendants' false propaganda, knowing that Plaintiffs were represented by counsel and that there would be litigation forthcoming.  Of course, we are at least 2 years (and possibly much longer) from a trial, and the likelihood that anyone in the jury pool will remember these press conferences is likely very low.

However, Defendants intentionally omit Chief Williams press conference and the video presentation released publicly from their motion. It is galling that Defendants accuse Plaintiffs of doing exactly what Defendants have themselves done, and totally omitted Defendants' own public statements from their motion. In our view, this is a material, intentional omission sanctionable under Rule 11.

Correct the omission of Defendants public statements immediately. Your motion is substantively and materially misleading without such inclusion.  If that is not done in short order, I will file a motion for sanctions for violating Rule 11 along with our oppositions when they are due.

It may be, based on the declarations submitted in your motions and its conspicuous activities, that the Vallejo POA has pressured you into filing these motions (for a protective order and change of venue).  That does present not a good-faith basis for filing these motions.

Also, be advised that Ms. Nold is no longer with our office, but I am well-aware of the Vallejo POA's antipathy toward her. It seems that these motions do not come from a well-considered place.

Before I invest significant time in opposing them, I ask that you withdraw both your Motion for Protective Order and your Change of Venue Motion. They are both sorely wanting. Defendants do not get to be the only party that speaks publicly. The effort to impose prior restraint and infringe on Plaintiffs' First Amendment rights, while the Defense has wantonly exercised its own First Amendment rights in this case, is unconscionable and baseless, particularly in light of Defendants own actions and conduct.

Consider this my effort to meet and confer. I do think your material omissions are sanctionable. They put your motion in a totally different light than how you misrepresent it to the Court.

yours truly,
Ben

***************** This is an EXTERNAL EMAIL. Stop and think before clicking links or opening attachments. *****************

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

| | |
|---|---|
| **From:** | Katelyn Knight |
| **To:** | Melissa Nold |
| **Cc:** | Randy J. Risner |
| **Subject:** | RE: Monterrosa |
| **Date:** | Tuesday, July 14, 2020 2:20:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

I have been advised that the repair company used takes the glass with them when they do a replacement, I have requested that staff provide me with the invoice for the repair.

**Katelyn M. Knight**
**Deputy City Attorney**
*City of Vallejo | City Attorney's Office*
*555 Santa Clara Street*
*Vallejo, CA 94590*
*707.648.4388 | katelyn.knight@cityofvallejo.net*



---

**From:** Melissa Nold [mailto:melissa.nold@johnburrislaw.com]
**Sent:** Tuesday, July 14, 2020 2:16 PM
**To:** Katelyn Knight <Katelyn.Knight@cityofvallejo.net>
**Cc:** Randy J. Risner <Randy.Risner@cityofvallejo.net>
**Subject:** Re: Monterrosa

Was the window itself preserved as evidence?

On Tue, Jul 14, 2020 at 2:11 PM Katelyn Knight <Katelyn.Knight@cityofvallejo.net> wrote:

> Hi Melissa,
>
> I have consulted with the Department have learned that the undercover truck being driven during the incident is back in service, but we will of course preserve all photographic evidence of its condition.  We will also be sure to preserve the drone post-examination.
>
> **Katelyn M. Knight**
> **Deputy City Attorney**
> *City of Vallejo | City Attorney's Office*
> *555 Santa Clara Street*
> *Vallejo, CA 94590*
> *707.648.4388 | katelyn.knight@cityofvallejo.net*
>
> 

**From:** Melissa Nold [mailto:melissa.nold@johnburrislaw.com]
**Sent:** Thursday, July 09, 2020 5:27 PM
**To:** Randy J. Risner <Randy.Risner@cityofvallejo.net>; Katelyn Knight <Katelyn.Knight@cityofvallejo.net>
**Subject:** Monterrosa

Good afternoon Mr. Risner,

I want to restate our demand for preservation of evidence in the Monterrosa case, to specifically include preservation of the truck Officer Tonn was riding in and the drone the police department confiscated. We intend to examine the drone and truck as part of our upcoming litigation.

Thanks,

Melissa

"CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise be protected by law. Any access, use, disclosure or distribution of this email message by anyone other than the intended recipient(s) is unauthorized and prohibited. If you are not an intended recipient (or an agent acting on an intended recipient's behalf), please contact the sender by reply e-mail and immediately destroy all copies of the original message. Virus scanning is recommended on all email attachments."

****************** This is an EXTERNAL EMAIL. Stop and think before clicking links or opening attachments. ******************


"CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise be protected by law. Any access, use, disclosure or distribution of this email message by anyone other than the intended recipient(s) is unauthorized and prohibited. If you are not an intended recipient (or an agent acting on an intended recipient's behalf), please contact the sender by reply e-mail and immediately destroy all copies of the original message. Virus scanning is recommended on all email attachments."

****************** This is an EXTERNAL EMAIL. Stop and think before clicking links or opening attachments. ******************