```
VERONICA A.F. NEBB
City Attorney, SBN 140001
BY:  KATELYN M. KNIGHT
Assistant City Attorney, SBN 264573
CITY OF VALLEJO, City Hall
555 Santa Clara Street, Third Floor
Vallejo, CA  94590
Tel:     (707) 648-4545
Fax:     (707) 648-4687
Email:  katelyn.knight@cityofvallejo.net
```

Attorneys for Defendant CITY OF VALLEJO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| NEFTALI MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; NORA MONTERROSA, individually and as co-successor-in-interest to Decedent SEAN MONTERROSA; MICHELLE MONTERROSA, individually; ASHLEY MONTERROSA, individually,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CITY OF VALLEJO, a municipal corporation; JARRETT TONN, individually, and, Vallejo police officers DOES 1-25, inclusive,<br><br>　　　　Defendants. | Case No. 2:20-cv-01563-DAD-SCR<br><br>**DEFENDANT CITY OF VALLEJO'S OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND AMEND THE SCHEDULING ORDER**<br><br>DATE:　October 6, 2025<br>TIME:　1:30 p.m.<br>CTRM:　4 |

## I.

## INTRODUCTION

The Plaintiffs in this action seek an order re-opening discovery, almost a year after it closed, based on testimony of terminated City employee John Whitney in an unrelated case that certain types of peace officer complaints called Informal Resolutions were kept in a separate filing cabinet from other Internal Affairs files and someone told Whitney they were not produced in discovery.  This motion should be denied.

1

First, Plaintiffs have had a full and fair opportunity to conduct all *Monell* discovery in this action, including eight depositions focused on *Monell* discovery and specifically including a deposition of John Whitney and a FRCP 30(b)(6) deposition covering categorization and tracking of different types of complaints, specifically including Citizen Complaints and Inquiry Resolutions (previously called Informal Resolutions), how they are classified and investigated, and how that data is logged and reviewed.  Second, Whitney's testimony was vague, not based on personal knowledge, and contrary to the Vallejo Police Department and the City's practice.  Third, the subject of records produced in discovery in litigation is not relevant to Plaintiffs' *Monell* claim, which requires Plaintiffs to establish a direct causal link between a policy or practice and the alleged constitutional violation of excessive force.  Finally, Plaintiffs have failed to meet their burden of identifying the specific discovery sought and explaining why the discovery could not have been sought earlier, is relevant, proportionate, and is not cumulative or duplicative of the discovery already completed.

## II.

## BACKGROUND

### A.   Factual Background

This case arises from an officer-involved shooting that took place on June 2, 2020.  In the wake of the civil unrest following the killing of George Floyd, caravans of looters planned to target Vallejo and were systematically burglarizing pharmacies, marijuana dispensaries, and gun stores before recklessly fleeing at high speeds.  Portions of Vallejo City Hall were set on fire. The City of Vallejo, along with most other Bay Area cities and counties, declared a local emergency and imposed a curfew.  Despite the curfew, the City of Vallejo experienced an unprecedented onslaught of organized criminal activity on the night of the incident.  Even with support from allied agencies, the City's police force was overwhelmed.

Due to the level of criminal activity, Police Captain Lee Horton was on the streets assisting with roving patrol.  Just after midnight, Captain Horton saw a group of looters breaking into the Walgreens at 1050 Redwood Street in downtown Vallejo.  The Vallejo Police Department had received multiple 911 calls reporting criminal activity at that location and had already responded to two burglaries in progress.  Captain Horton called for assistance and three

detectives from the Vallejo Police Department's specialized crime reduction unit in an unmarked police vehicle responded: Detectives Wesley Pittman, Bretton Wagoner, and Jarret Tonn. Together, the team developed a plan to approach the parking lot from both sides to block in the looters' vehicles and take them into custody. Officer Wagoner was driving the unmarked SUV, Officer Pittman rode in the front passenger seat with a flash grenade ready in his hand, and Officer Tonn rode in the back seat with his rifle in hand.

As the officers were pulling into the parking lot, Captain Horton saw one of the looters acting as a lookout with one hand to his mouth and his arm extended down holding what appeared to be a weapon—he broadcast over the radio that the suspects were "armed, possibly armed". The officers in the unmarked SUV activated their red and blue police lights and as they entered the parking lot, looters immediately began piling into two vehicles to flee the scene.

At that moment, the officers in the SUV saw one of the looters, Sean Monterrosa, run from the Walgreens toward a black sedan waiting in the parking lot. Instead of entering the vehicle, Monterrosa abruptly and unexpectedly stopped and turned toward the officers in a crouching down half-kneeling position as if in preparation to shoot and moved his hands toward what appeared to be the butt of a handgun near his waist. Perceiving an imminent deadly threat, Officer Tonn fired five shots at the suspect through the windshield, and one of the shots struck Mr. Monterrosa.

**B.  Discovery Conducted by Plaintiffs to Date**

Plaintiffs have conducted extensive discovery in this case already, including broad *Monell* discovery and the deposition of John Whitney. Plaintiffs issued six sets of written discovery and eight subpoenas for business records, and conducted sixteen depositions. Of those sixteen depositions, four were of percipient witnesses, four were experts, and the remaining eight were focused on *Monell* issues. Those remaining eight depositions consisted of former Captain John Whitney, two former Chiefs of Police Andrew Bidou and Shawny Williams, former City Manager Greg Nyhoff, former Lieutenant Kent Tribble, and three additional witnesses produced pursuant to a FRCP 30(b)(6) notice, which was issued for the following topics:

    1. The concise officer history, IA Pro file, and/or force incident files for Defendant Tonn.

    2. Any and all administrative investigations into Defendant Tonn.

3. The circumstances, investigation, administrative review, administrative determination, subsequent litigation and/or settlements related to the following incidents involving Defendant Tonn:

    a. November 17, 2014 force incident involving Anthony Felix.
    b. November 4, 2018 force incident involving Jose Villalobos.
    c. July 30, 2017 force incident involving Mychael Nelson.
    d. March 6, 2019 force incident involving Tino Armstrong.
    e. February 22, 2015 force incident involving Gerald Brown.
    f. March 31, 2017 force incident involving Kevin DeCarlo.
    g. July 8, 2017 force incident involving Victor Hurtado.
    h. June 2, 2020 force incident involving Sean Monterrosa

4. For Defendant Tonn, each prior citizen complaint, internal investigation, or personnel file entry reflecting in the ten years prior to June 2, 2020:

    a. Any issue related to excessive or unreasonable force, including without limitation lethal force
    b. Any issue related to reporting or to the officer's credibility or trustworthiness

5. A person who can speak on behalf of the City who has direct and relevant knowledge of all documents, data and records relating to, from, or generated by any ECM (electronic control module), GPS, global positioning system, EDR, black box or event data recorder, any onboard recording device on-board computer, tachograph, trip monitor, trip recorder, trip master or other recording or tracking device on the grey Ford pickup truck with California license plates 6SFM345 that was used during the officer-involved shooting incident that took place on June 2, 2020.

6. The VPD's current standards and the substance of the VPD's training for peace officers regarding each of the following subjects, as well as any differences in that standard training (if any) which the VPD published or advised in the ten years prior to June 2, 2020:

    a. Use of deadly force
    b. Use of force
    c. De-escalation
    d. On the air (radio) communication;
    e. Body worn cameras
    f. Badge bending or manipulation
    g. Undercover operations
    h. Imminent threat assessment
    i. Furtive movement identification
    j. Preserving evidence

7. The policies of the City of Vallejo regarding the following topics in the ten years prior to June 2, 2020:

    a. Processing, auditing and maintaining evidence
    b. Use of Force policies
    c. Deadly Force Applications
    d. De-Escalation

    e. Policy #321.6 (Efficiency)
    f. Policy #423.4 (Portable Audio/video Recorders).
    g. Racial- or bias-based profiling, racial prejudice, or racial bias
    h. Maintaining evidence
    i. Internal Affairs investigations
    j. Critical Incident reviews

8. The operations, processes, programs, review protocols, and audits of the City of Vallejo on the following topics:

    a. Internal Affairs Investigations
    b. Critical Incident Reviews
    c. Disciplinary Action
    d. Early warning systems for officers repeated uses of force
    e. Early warning systems for officers repeated uses of deadly force

9. The City's policies regarding, and the identity of individuals responsible for maintaining, the collection and organization of any other electronic communication among VPD personnel, including communication by phone, work computer, home computer, text message, other electronic device, and/or social media in the ten years prior to June 2, 2020.

10. The extent to which VPD collected any information from the individual electronic devices of VPD personnel, including text messages, e-mail, social media information, and any other information relating to Sean Monterrosa.

11. A person who can speak on behalf of the City who has direct and relevant knowledge of any documents or data YOU have collected and/or analyzed and/or any research YOU have conducted regarding officer involved shootings in the ten years prior to June 2, 2020.

12. A person who can speak on behalf of the City who has direct and relevant knowledge of the timing of, factual basis for, the findings of, and communications pertaining to the compliance investigations and internal affairs investigations, of the following officer involved shootings:

    a. Angel Ramos
    b. Andrew Powell
    c. Willie McCoy
    d. Mario Romero
    e. Jared Huey

13. Any and all processes, procedures, policies, and/or programs wherein the VPD was informed of settlements reached by the City resolving lawsuits stemming from the use of force by police and any and all processes, procedures, policies, and/or programs of reviewing such incidents after settlement.

14. A person who can speak on behalf of the City who has direct and relevant knowledge of the Collaborative Reform Agreement entered into by the Vallejo Police Department and the California Department of Justice.

15. A person who can speak on behalf of the City who has direct and relevant knowledge of the Stipulated Judgment entered into by the Vallejo Police Department and the California Department of Justice.

16. A person who can speak on behalf of the City who has direct and relevant knowledge of the evaluation, assessment, review, or reform of the critical incident review and/or the critical incident review board as well as any differences in the operation of the critical incident review and/or the critical incident review board (if any) which the VPD published or advised in the ten years prior to June 2, 2020.

17. A person who can speak on behalf of the City who has direct and relevant knowledge of VPD's policy on how supervisors review arrest and use of force reports and how and when they recommend remedial or corrective measures in the ten years prior to June 2, 2020.

**18. A person who can speak on behalf of the City who has direct and relevant knowledge of any data YOU are aware of as of the date of this Notice that the VPD has previously collected and/or analyzed, and/or any research the VPD has conducted including the resulting documents regarding the categorization and investigation of complaints in the ten years prior to June 2, 2020:**

    **a. Inquiry resolution**
    **b. Mis-categorization of formal complaints**
    **c. Checks and balances to ensure compliance with Internal Affairs or Administrative investigation process**

19. A person who can speak on behalf of the City who has direct and relevant knowledge of the oversight and accountability structures in place at the VPD at the time of the incident in this case and in the in the ten years prior to June 2, 2020 to address the following concerns included in the May 2020 OIR Group Report:

    a. The City's risk management crisis
    b. Higher insurance premiums
    c. Negative claim trends
    d. The "siege mentality" of the VPD
    e. Officer performance
    f. The VPD's internal assessments
    g. Compliance in policy and training

20. A person who can speak on behalf of the City who has direct and relevant knowledge of insurance claims paid out in the ten years prior to June 2, 2020 by YOUR insurers that involved/related to the VPD including:

    a. Payment amounts
    b. Dates of payments
    c. Factual allegations
    d. Claim investigations
    e. Premium increases and justifications by insurer

21. The timeline and details of the City's knowledge of and investigation into badge bending, including but not limited to receipts for replacement or repaired badges, emails and communications regarding badge bending, information sharing between the VPD and city council regarding badge bending.

22. A person who can speak on behalf of the City who has direct and relevant knowledge of the Administrative Investigation into "Badge Bending Allegation[s]" completed by R. Giordano Consulting and Investigations, LLC, including:

    a. The retention and selection of R. Giordano Consulting and Investigations, LLC

    b. Communications between Chief Williams and Christine Maloney and Chief Williams and R. Giordano Consulting and Investigations, LLC between the following drafts: 7/25/21, 8/11/21, 8/28/21, 9/8/21

    c. The communications, advice and voicemail referenced on GIORDANO 002009

    d. And any all edits made by, suggested by or ordered by YOU including but not limited to Chief Williams and Christine Maloney

    e. Revisions made to: GIORDANO 000157, GIORDANO 001796, GIORDANO 001962, GIORDANO 001642

    f. The decision to rewrite sections involving Kyle Wylie significantly including removing dates from later drafts that identified when the badge bending happened.

    g. References to Ryan McMahon and Terry Poser

23. A person who can speak on behalf of the City who has direct and relevant knowledge of the collective bargaining agreement with the VPOA in force during the years 2019-2021, as well as any differences in that agreement (if any) which YOU published or advised in the ten years prior to June 2, 2020.

24. A person who can speak on behalf of the City who has direct and relevant knowledge of the basis for any changes made to the collective bargaining agreement with the VPOA in force during the years 2019-2021.

25. A person who can speak on behalf of the City who has direct and relevant knowledge of whether the Vallejo Police Officer's Association president or counsel had any input, oversight, commentary, requirements, grievances, demands or control over practices relating to quality assurance, quality assessment, or quality improvement, and/or analysis of policies, procedures, guidelines, recommendations, practices, and training that is disseminated regarding each of the following in the ten years prior to June 2, 2020.:

    a. Recruitment and hiring
    b. Training
    c. Usage of body cameras

       d. Any issue related to failure to intervene or supervise
       e. Officer discipline
       f. Any issue related to racial bias, profiling, or prejudice

26. A person who can speak on behalf of the City who has direct and relevant knowledge of the basis for the termination of John Whitney, including without limitation:

       a. The basis for the termination
       b. Terms of the termination
       c. The factual basis and reasons for his termination
       d. The identity of all persons involved in his termination
       e. The timing of his termination

27. A person who can speak on behalf of the City who has direct and relevant knowledge of the resignation of Shawney Williams, including without limitation:

       a. The basis for the resignation
       b. Terms of the resignation
       c. The factual basis and reasons for his resignation
       d. The identity of all persons involved in his resignation
       e. The timing of his resignation

28. A person who can speak on behalf of the City who has direct and relevant knowledge of policies requiring officers to be aware, report, recognize, and prevent abuse of police power if it occurs in their presence (i.e. Reporting on the misconduct of colleagues including policies implemented in the ten years prior to June 2, 2020 by the City to protect whistleblower/reporting officer).

(Knight Decl., Ex. A and ¶ 4)(emphasis added). Topic 18 is of particular relevance to this motion, and Deputy Chief of Police Robert Knight was produced for those subjects. (See Motion, Ex. C.)

While the parties were able to narrow down these topics somewhat through meet and confer efforts, a discovery motion, and agreements to provide documents and information in lieu of testimony on certain topics, the FRCP 30(b)(6) depositions were nevertheless extensive and required production of three different individuals to cover all of the narrowed topics.

**C.     Procedural Status and Plaintiff's Current Motion**

Fact and expert discovery in this case have concluded and expert discovery closed on October 10, 2024. Defendants City of Vallejo and Jarrett Tonn both filed motions for summary judgment, which have been taken under submission.

On August 20, 2025, Plaintiffs filed a motion to re-open discovery based on testimony of

former employee John Whitney in an unrelated case that "Informal Resolution[1]" complaint files were kept in a separate filing cabinet from other kinds of complaints and were not "being included in the internal affairs folder." (Motion, Ex. B at 32:2-17 and 33:23-34:16.) Plaintiffs argue this establishes good cause to re-open discovery to ascertain whether the City covered up misconduct by its officers by failing to produce files and whether any materials in a separate filing cabinet pertain to Officer Tonn. (Motion at 4:18-21.) Plaintiffs have not identified what specific discovery they seek to conduct beyond the discovery already completed on these topics, but Plaintiffs' counsel indicated during the parties' meet and confer that they might seek to conduct additional depositions. (Knight Decl., ¶ 3.)

### III.
### ARGUMENT

A. **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 16(b)(4), a pre-trial scheduling order may not be modified except on a showing of good cause and with the consent of the Court. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension." *Porter v. Cal. Dep't of Corr.*, 2006 U.S. Dist. LEXIS 368, *3 (E.D. Cal. Jan. 6, 2006)(quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Counsel's desire for a second bite at the apple does not constitute good cause under Rule 16. *See Id.* at *4.

It is incumbent upon the moving party to describe the nature of discovery sought, including identifying specific witnesses and explaining why their testimony could not have been obtained previously. *See Id.* Further, a party seeking to take additional depositions beyond the limits imposed by the Federal Rules must make an additional showing. Federal Rule of Civil Procedure 30(a)(2) presumptively limits the number of depositions in a civil matter to ten for each side, however Rule 26(b)(2) permits the Court to alter the number of depositions permitted.

---

[1] "Informal Resolution" or "Inquiry Resolution" complaints are those that are plainly frivolous or unfounded either on their face or based on a review of video footage and therefore require fewer investigatory steps to conclude. (Motion Ex. B at 14:17-17:12.)

"A party seeking to exceed the presumptive limit bears the burden of making a particularized showing of the need for additional depositions. *Rounds v. Bd. of Trs. of the California State Univ.*, 2022 U.S. Dist. LEXIS 232595, *3 (E.D. Cal. Dec. 28, 2022)(citations omitted). Requests for additional depositions that would be cumulative, disproportionate to the needs of the case, would reveal no new evidence, or where the party has already had ample opportunity to obtain the discovery in the action should be denied. *See* Fed. R. Civ. Proc. 26(b); *Kaseberg v. Conaco, LLC*, 2016 U.S. Dist. LEXIS 111767, *9 (E.D. Cal. Aug. 19, 2016).

**B.   Plaintiffs Have Not Shown Good Cause to Reopen Discovery, Nor Met Their Burden of Establishing a Need for Additional Depositions**

Plaintiffs' request to re-open discovery to give them another bite at the proverbial apple should be denied. The motion is based on deposition testimony of former Vallejo Police Department employee John Whitney in an unrelated case regarding how the Internal Affairs Division of the department stored complaints during his employment, however the Plaintiffs in this action **have already deposed John Whitney**. (Knight Decl., ¶ 4.) During that deposition they had the opportunity to ask Mr. Whitney any questions about his assignments and any issues he observed during his time with the City. Neglecting areas of inquiry in a deposition does not support good cause for additional discovery.

Further, Plaintiffs have already taken an extensive FRCP 30(b)(6) deposition covering the Vallejo Police Department's Internal Affairs Division, which included categorization and tracking of different types of complaints, specifically including Citizen Complaints and Inquiry Resolutions (previously called Informal Resolutions), how they are classified and investigated, and how that data is logged and reviewed. (Motion, Ex. C at 13:3-17:15.) The storage of Informal Resolution or Inquiry Resolution files in a separate cabinet from other types of complaints is wholly irrelevant. Plaintiffs have had a full and fair opportunity to conduct discovery into the Vallejo Police Department's complaint and investigation process and they have done so.

Additionally, the testimony of John Whitney relied upon by Plaintiffs is vague, not based on personal knowledge, and does not clearly stand for the proposition it is being presented for.

In the deposition submitted, John Whitney testified that Informal Resolution files were kept in a separate filing cabinet from other files in internal affairs, and that this cabinet was shown to him by Sergeant Potts in 2015. (Motion Ex. B at 32:2-17 and 34:10-35:8.) Counsel asks Whitney to confirm that Sergeant Potts told him "the cabinet in Ms. Brown's office were the things that actually went for Pitchess motions and for court-related things, and the one in Potts's office were the ones that were the informal resolutions or the ones that didn't make it to the actual file in Brown's office?" and he says "yes". (Motion Ex. B at 35:15-36:1.) It is not clear what is meant by court-related things, and Whitney did not state what specifically Sergeant Potts said. Whitney also testified that he himself never went to *Pitchess* motions (and therefore he would have no personal knowledge of what was brought to Court) and testified he did not know how long the alleged condition lasted. (Motion, Ex. B at 36:2-6, 37:24-38:19.) Whitney's employment with the City was terminated in 2019. (Knight Decl., ¶ 5.)

Inquiry Resolution files are not categorically excluded from *Pitchess* review or civil discovery, though they are subject to objection on relevance and privacy grounds and it is not unusual for the City to agree to produce responsive files limited only to certain topics. (Knight Decl., ¶ 6.) Indeed, in this case the City's responses to Plaintiffs' requests for production of documents specifically stated "the City will produce any citizen complaints, inquiry resolutions, and internal affairs or other administrative investigations involving allegations of excessive force, dishonesty, perjury, fabrication, and/or falsifying evidence, police reports, and/or court affidavits." (Knight Decl., Ex. B, Response to No. 10.) Plaintiffs suggest that the IAPro log they were provided of incidents related to Officer Tonn may be incomplete based on Whitney's testimony. (Motion at 4:1-6.) That log was limited by agreement to incidents pertaining to use of force and veracity (Motion, Ex. B at 15:14-16:3 and 18:25-19:15). The log has been reviewed again against all incidents and does not omit any responsive entries. (Knight Decl., ¶ 8.)

Further, Plaintiffs have not established how further discovery into discovery production in unrelated *Pitchess* and unrelated litigation is relevant to Plaintiffs' *Monell* claim in this action. A municipality is generally not subject to liability under 42 U.S.C. § 1983 for the alleged unconstitutional acts of an employee. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

An exception exists where the constitutional violation was caused by "a policy, practice, or custom of the entity", or was the result of an order by a policy-making officer. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002). To prevail on a Section 1983 cause of action under *Monell*, Plaintiff must identify the policy or custom that is alleged to have caused his injury, show that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). As discussed above, the complaints at issue are not categorically excluded from *Pitchess* or civil discovery, but in any event there is no logical causal link between an alleged withholding documents in litigation and the alleged constitutional violation of excessive force.

Finally, Plaintiffs have failed to identify the specific discovery sought and explain why the discovery could not have been obtained earlier when John Whitney was deposed, and would not be duplicative or cumulative of the extensive *Monell* discovery already conducted. Plaintiffs also have not set forth facts justifying additional depositions beyond the sixteen already taken by the Plaintiffs. Discovery in this case closed almost a year ago. Plaintiffs had the burden of identifying and justifying the specific discovery sought. They have not met that burden.

## IV.
## CONCLUSION

For the reasons discussed herein, Defendant City of Vallejo respectfully requests that Plaintiff's Motion be denied.

DATED: September 3, 2025                    Respectfully submitted,

                                                                                      /s/ Katelyn M. Knight
                                                                                   KATELYN M. KNIGHT
                                                                                   Assistant City Attorney
                                                                                   Attorney for Defendant
                                                                                   CITY OF VALLEJO